## VILLAGE OF SHERIDAN

### v.

## TIMOTHY HIBBARD.

1.  INSTRUCTIONS.—Where the court, in telling the jury what should be done in a certain event, used the expression, "if the jury find the defendant guilty, then they should assess the plaintiff's damages," and omitted to say find it guilty under the evidence and instructions of the court, *held*, that as the court was not instructing the jury how or from what they should find, which had been done in other instructions, there was no error in such omission.

2.  INSTRUCTION AS TO DAMAGES.—An instruction which told the jury that appellee, who was suing for an injury caused by a fall on a sidewalk, would be *entitled* to recover for pain and anguish, enumerating the different elements of damages, not however, any of an exemplary nature, if, etc., instead of saying the jury *may* give such damages, was not erroneous.

3. DEFECTIVE SIDEWALKS—NOTICE—DAMAGES.—In case of a suit for an injury by a fall on a defective sidewalk an instruction which stated in general terms the duty of a city to use ordinary care and diligence in the erection and maintenance of its sidewalks, but which omitted the circumstance of notice to the city of a defective sidewalk, is not erroneous where the question of notice was brought out in other instructions.

4. MUNICIPAL CORPORATIONS—EXECUTION.—No execution can issue against a municipal corporation.

APPEAL from the Circuit Court of La Salle county ; the Hon. GEORGE W. STIPP, Judge, presiding.   Opinion filed April 5, 1886.

Mr. D. B. SNOW and Messrs. MAYO & WIDMER, for appellant.

Messrs. BLAKE & MOLONEY, for appellee.

LACEY, J. P.   This was an action brought Dec. 4, 1883, by appellee against appellant, to recover damages alleged to have been sustained by reason of injuries in falling upon a sidewalk within the corporation limits of appellant.   The allegations are that appellant allowed the sidewalk to remain out of repair, by reason whereof the appellee, on Aug. 15, 1883, fell and was injured.   The recovery below was for the sum of $3,500.

The grounds relied on by the appellant for reversal are : first, that the verdict is clearly against the weight of the evidence ; second, the court, during the course of the trial, erred in stating to the jury a conclusion deduced, as was claimed, from the evidence ; third, the court erred in giving the appellee's fifth and second instructions ; fourth, the court erred in awarding an execution against appellant.   Those comprise the sum of the objections urged, and we will notice them, but not in the order in which they are presented.

And first, is the verdict manifestly against the weight of the evidence.   The points of attack, as to the insufficiency of the evidence, are mainly directed to three questions : first, did the appellant use due diligence to keep the sidewalk at the place where the accident occurred in repair ; second, was the sidewalk

Village of Sheridan v. Hibbard.

out of repair at that point; third, was the plaintiff negligent as to the greater portion of his damages in not obeying the directions of his physician in not lying in bed three or four months, till his hip recovere 1. It is evident that no objection can be reasonably urged against the sufficiency of appellee's injury, as it appeared at the trial, to sustain the verdict. It was of the most serious nature, though at first and for some time it did not appear very serious. It appeared to be a mere bruise over the hip and a sprain of the hip. It gave some pain to appellee, though it was thought by both appellee and his physician that there would be a speedy, or at least an ultimate recovery. Yet in the course of time the injury or wound developed into coaglia or hip joint disease. The hip bone was in a chronic state of inflammation. The hip, after the injury, seemed more or less paralyzed—the sciatic nerve was injured, and at the trial there was atrophy of the muscles on the back part of the hip, with less ability to abduct and deduct. The appellee was likely always to be in a state of intermittent pain. There is either a shortening of the neck of the femur or wasting of the head of the bone, the injured leg at the time of the trial being three-fourths of an inch shorter than the other. The symptoms also indicate chronic inflammation of the sheath of the nerves. The physicians think the injury permanent, though some of them think there is some slight chance to doubt on that point. The appellee was fifty-eight years old, and on account of his injuries the doctors think he will never be able to do any more manual labor hereafter. His condition is in the highest degree painful and pitiable. The point made that the appellee was negligent and brought this terrible condition on himself, we think, can not be maintained. While some of the physicians seem to think that there would have been a permanent cure if the appellee had remained in bed three or four months, yet the same doctors say that he could not have done so without impairment of his health; that he could not have stood it; that it would have killed him to have been confined six months, so we think that as to these points no just objection can be raised against the verdict of the jury. Was the sidewalk out of repair at the point where the appellant received

the fall and injury ?   It app ears from the evidence of the appellee, Jas. E. Cameron, Israel Cameron, and Benton Mason, that on the night of the 15th day of August, 1883, about eight o'clock in the evening, it being dark, the appellee and the persons above named were proceeding southwardly along Robinson street, on the east side of the street, Jas. E. Cameron and Mason being in front, walking side by side, and Israel Cameron and appellee just behind, also walking side by side on the same walk, the latter being on the west side of the walk, when within thirty-five or forty feet of the southeast corner of the block Israel Cameron stepped on a board seven to eight inches wide at one end and two inches wide at the other, the board tipped up, and appellee caught his toe under it, when it threw him against Cameron, from whom he rebounded and went off to the right, and in going over he caught his foot in the crevice, and that was what caused the injury.   The three witnesses above named all testify substantially the same as to the manner, place, and circumstances of the accident as above stated.   The walk was three feet wide, laid on two stringers—some boards were wide and some narrow—and one inch thick.   The appellee had not previously passed over this walk for two months. All agree that this walk had first been laid down on State street in 1879, and after remaining one year was, in 1880, taken up and removed and laid down on Robinson street.

It appears from the evidence, and is admitted by appellee, that he pointed out to a committee of the board of trustees a different place, they getting him to go with them and show them the place he was hurt at, he having filed a claim of $100 against it for damages resulting from this injury.   This place was eighty feet north of the south end of the walk, and it was a different kind of board than the diagonal one described as the one stepped on by Israel Cameron.   But appellee, while admitting this, says that he misled them and showed them the wrong place, out of fear that they were trying to set up some trick on him.

We are inclined to think that the jury were justified in finding the true place to be the one testified to by appellee and three other witnesses, who were present and eye-witnesses.

We think that while the question might be nearly equally balanced in regard to the question whether the sidewalk was out of repair at the time, or whether it was in general in good repair, was a question which the jury might determine either way without the court having the right to interfere; especially so since the witnesses, appellee himself, Benton Mason, Marion Barber, Charles Riskendall and David Cothran all testify to facts, which, if true, would show this walk along its whole length, as well as at the place in question, to have been badly out of repair, and that it had been so for a great length of time. It is true that appellant had an equal or greater number to show that it was in good repair, a number of them not having so good an opportunity to know, however. The jury had the right to believe the appellee's witnesses, and especially since the walk had been put down some four years, and moved once. We think the jury was justified in finding for appellee on this issue.

The next question is, did the appellant use diligence in keeping the sidewalk in repair ; and this depends to some extent on the question of notice of the board in question having been split and loose, or upon the fact, if it be a fact, of its having been so long loose and split that with due diligence the defect could have been discovered and the walk repaired. On this point the appellee showed by Benton Mason that on the 11th August, four days prior to the accident, this same board was loose. He testifies that he was going down town and his toe caught on it, and it came near throwing him down, when he stopped, picked it up, and threw it off the walk. The board at the time was lying flat down. Marion Barber testified that he had seen holes in it the fore part of August and July, and saw planks off not more than thirty feet from the end of the walk, not more than two places at a time. He hardly thought it was repaired much till after appellee was hurt. It was fixed up right away afterward. They fixed two or.three places not over forty feet from the end.

Charles Riskendall swears that he noticed holes in the walk just before appellee was hurt; could not tell exactly the place; it was on the south end of the walk, probably within

forty or fifty fee ,of the south end. There was a hole in it—loose board.

David Cothran testified: For three or four weeks prior to the time the appellee was hurt he walked over the walk two or three times per week, or maybe more. Generally when he went over it there were loose, split, broken plank in it from May up to that time; the sidewalk was then out of repair, though after appellee was hurt new boards were put in, none before. He believed that thirty to fifty feet of south end of the walk there were broken and split boards in it. He had seen from three to four holes in the sidewalk there at the time; boards broken. There was a hole thirty to forty feet from the south end; board not nailed down. The sidewalk has never been good since he knew it.

Thus it will be seen if the jury believed this testimony they must have found that this plank, when the injury occurred, had been loose for at least four days and may be longer, before the accident, and had not been repaired. It also appears, according to a number of witnesses, that the sidewalk was generally dilapidated and out of repair, and that it was not being looked after with much diligence by the village authorities. It was also in proof that the street commissioner who had the care and supervision of the sidewalks was engaged that summer in raising a crop of corn a mile or so from the village, and only examined the sidewalks once in a week or ten days. If this sidewalk was in the bad condition some of the witnesses testified to, that kind of examination, as the jury might well determine, was not sufficient. It is true there was contradictory evidence. But we think that there was evidence from which the jury might determine that the sidewalk was out of repair at the place of the injury sufficient length of time for the village authorities, with the use of ordinary care, to have discovered and have repaired it; and also that the authorities having the sidewalk in charge did not use due care to keep it in repair. This assignment of error we do not think well taken. We now pass on to the consideration of the next point—did the court err in giving the fifth and second instructions for the appellee. The first objection to

the fifth instruction is, that in using this expression, " If the jury find the defendant guilty, then they should assess the plaintiff's damages," the court omitted to say "*find them guilty under the evidence and instructions of the court.*" We see no force in this objection. The court was telling the jury what should be done in a certain event, not instructing them how or from what they should find, and it was not necessary to tell them anything about how or from what they should find ; that was done in the other instructions.

It is also objected that the instruction tells the jury appellee would be *entitled* to recover for pain and anguish, etc., enumerating the different elements of damages, not, however, any of an exemplary nature, instead of saying the jury *may* give such damages.

We see no grounds of complaint to the instruction for such reason. The amount of such damages is a matter for the jury to determine, and the instruction did not limit the jury in that particular. The appellee was entitled to these damages if the jury should find that he had been damaged in those particulars, as the jury were told. These the law regards as actual damages in contradistinction from exemplary damages, the giving of which, in any case, is wholly a matter of discretion with the jury, and it would be error to require the jury by instructions to give exemplary damages, but not so as to actual damages.

The case of C. & N. W. Ry. Co. v. Chisholm, cited, was a case where certain elements of the damages were exemplary. The feelings of shame or humiliation endured by plaintiff in consequence of being thrust off the car, damages for which the jury were *required* to give a verdict, was wholly exemplary, and of course not the *duty* of the jury to give it, but they might do so, if in their discretion they thought best. In the case of The City of Peoria v. Simpson, 110 Ill. 294, the court in its opinion seems to base its objection to the instruction on the ground that it was misleading, in that it was an invitation, and in fact an intimation by the court to the jury, that it was their duty to fix the "damages at the highest possible amount the evidence would justify." Of course if

such were the meaning of the instruction, and the court say it was, it would be erroneous, but not for the reason claimed by appellant. We do not understand that the Supreme Court has ever placed damages arising from "pain and anguish which the plaintiff has or will suffer in consequence of the injury, damages to his person, permanent or otherwise, occasioned by the injury," and damages of like nature, in the category of exemplary damages to be given by way of punishment. We understand these to be compensatory damages to which the plaintiff is *entitled* as a matter of law, the amount being in the sound discretion of the jury. The other objections to this instruction were equally untenable. The appellant's instructions were full, and taking all the instructions together we can not see how this instruction could mislead. The point made that the instruction should have been qualified so that the jury should have been given to understand that if any part of the injury resulted to appellee on account of his own misconduct in not following the advice of his physicians in regard to keeping in bed for three to four months, he could not recover for such injury. The instruction logically does exclude such damages, as it only directs the jury to give such damages as resulted *from the injury,* not his own misconduct. If the appellant had desired the jury more specifically instructed on that point it should have asked an instruction covering the ground, which no doubt would have been given ; failing to do so, it should not complain.

The second instruction objected to is as follows, to wit:

2. " The jury are instructed that the defendant in this case is bound by law to use ordinary, reasonable care and diligence in the erection and maintenance of its sidewalks, so that said sidewalks may with reasonable safety be traveled over by persons in the exercise of ordinary care, either by day or by night ; and if the jury believe from the evidence that the defendant was negligent in the performance of the duty so imposed upon it by law, and that by reason of such negligence in that regard the plaintiff sustained an injury, and that the plaintiff at the time when he was so injured was in the exercise of ordinary care and caution, then, and in such case, the

law makes the defendant liable to the plaintiff for the injuries so received."

The objection made to this instruction is, that it wholly ignores the " circumstance of notice " to the appellant that the sidewalk was out of repair. We do not think this objection is tenable. The instruction simply states what the general duty of the appellant was: That it was its duty to use ordinary care and diligence in the erection and maintenance of its sidewalks.

This duty includes discovering the defects in a sidewalk after they exist, and using diligence to repair them. But it does not require the village to repair unless it could by due diligence have discovered the defect, or unless it knew of and could by use of care have repaired it.

The instruction is true as a matter of law. It is the duty of a city or village to use due diligence in order to keep its sidewalks in repair. This is good as a general proposition of law and could not have misled the jury on the circumstance of notice, for it did not tell the jury notice was required, either constructive or real, in order to charge the city with a want of diligence, but to put it beyond question as to the matter of notice. The fourth instruction given for appellee tells the jury explicitly what would be notice; that is, that if the sidewalk should have been out of repair a sufficient length of time that the appellant, in the exercise of reasonable care and prudence, ought to have known the fact, then, that would be notice. We can not see how the jury could have been misled by the second instruction, charging the jury that appellant must use due diligence, and find no error in giving it.

The remark of the court on the testimony of one of the physicians, while not called for and out of order, is not of a character to damage appellant. There was no reason to doubt from the evidence that the bone wasted away. One leg was three fourths of an inch shorter than the other, shown clearly as we think, which proved that point beyond question; so that the assertion of the judge that it wasted away, or that it followed from the evidence that it did, could not mislead the jury. If there could be any conflict in the evidence as to

whether the leg was shorter or not, which taking all the evidence together we do not think there was, the remarks of the judge were only based on the supposition that such was the case and was only a conditional opinion.

The court erred in awarding an execution as no execution can issue against a municipal corporation ; and for this reason the judgment will be affirmed as to all the judgment except the order awarding execution, and reversed as to that, and the cause remanded, so the judgment may be enforced as modified. Costs to be taxed to appellee.

Affirmed in part and reversed in part, and remanded.