## City of Chicago v. Fred Loebel.

### Gen. No. 12,785.

1.  MUNICIPAL CORPORATION—*duty of, with respect to aprons over drains.* Where a city has permitted and acquiesced in the long-continued use by the public of an apron as a part of a sidewalk, it is bound to exercise care to maintain it in a safe condition for public use.

2.  NOTICE—*when municipal corporation may be presumed to have, of disrepair of apron.* Notice of the disrepair of an apron by a city may arise presumptively by lapse of time.

3.  EVIDENCE—*conclusions of witness properly stricken out.* The testimony of a witness in regard to the brightness with which an electric light was burning, given in language as follows: "so bright, he thought, he could have read a newspaper there," and

that ":he thought it (the light) was pretty near as bright as day," is properly stricken out.

4. Instructions—*use of phrase "sidewalk or apron" held not prejudicial.* In an action for personal injuries arising from the disrepair of an apron, an instruction containing the phrase, "sidewalk or apron," is held not prejudicially erroneous.

5. Verdict—*when not excessive.* A verdict for $7,500 is held, not excessive, where it appears that the injury was to the plaintiff's leg and was of such a character as to require a number of operations, to cause great pain, and render the plaintiff a chronic invalid for life.

Action on the case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. Charles A. Bishop, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed December 11, 1906.

**Statement by the Court.** Twenty-sixth street is an east and west street in the City of Chicago. Princeton avenue is a street running north and south and crosses Twenty-sixth street at right angles. When the accident occurred which gave rise to this action the sidewalk at the northeast corner of the above streets was connected with the roadway of Princeton avenue by an apron or bridge constructed of boards resting on cross-pieces or stringers. The apron or bridge was originally about eight feet in length from north to south and about two feet in width. The roadway of Princeton avenue being lower than the sidewalk, the apron formed an incline from the sidewalk to the street crossing, over the gutter which ran along the curb on the east side of Princeton avenue. This apron was, and had been for years, the passageway for pedestrians from the sidewalk to the crossing at that point.

From two to six months prior to the time of the accident to appellee, plaintiff, the apron had been loose and had sometimes been entirely out of place. At the time of the accident about two feet of the south end of the apron had been worn and broken off by wagon wheels running against and over it, and the ends of the cross-pieces were exposed and some fragments of the broken boards remained there.

In the early morning of March 17, 1901, just after midnight, appellee and the witness Dorn were walking westerly in the middle of the sidewalk on the north side of Twenty-sixth street, appellee being on the left or south side of Dorn. When they came to the corner of Twenty-sixth street and Princeton avenue and within a few steps of the apron, they met two ladies who were walking eastwardly over the north end of the apron. To allow the ladies to pass them, appellee and Dorn stepped a little to the south side of the sidewalk and continued on their way westward. Appellee stepped upon the south end of the apron where a portion had been broken off. The piece upon which he stepped was loose and broke under his weight and his foot and leg went down into the opening, causing him to fall forward upon the street crossing. Appellee sustained a compound fracture of both bones of the leg from two to three inches above the ankle, a severe sprain of the ankle joint, a rupture of the ligament that unites the joint to the long bone of the leg. From these injuries necrosis of the bone and chronic ulceration of the tissues adjacent to the point of fracture resulted, it is claimed.

Appellee brought this action against appellant in the Superior Court to recover damages for the injuries. Upon the trial a verdict was rendered against appellant and judgment was rendered thereon.

JOHN F. SMULSKI, for appellant; EDWARD C. FITCH and FRANK D. AYERS, of counsel.

MILES J. DEVINE, for appellee; MATTHEW P. BRADY, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

It is contended on behalf of appellant that there is no liability on the part of the city for the alleged injuries to appellee.

The liability in this case is not predicated upon a
duty on the part of the city to construct aprons or
bridges over drains or gutters. The liability of the
city is placed upon the ground that having adopted it
and permitted and acquiesced in the long-continued use
of the apron by the public as a part of the sidewalk
the city was bound to exercise care and maintain it in
a reasonably safe condition for public use. This posi-
tion, we think, is amply sustained by the authorities.
Hogan v. City of Chicago, 168 Ill. 551; Village of
Mansfield v. Moore, 124 id. 133; City of Atlanta v.
Champe, 66 Ga. 659; City of Chicago v. Baker, 95 Ill.
App. 413.

The evidence in this case is very voluminous, and it
can be referred to only in a general way in this opin-
ion upon the questions of fact involved.

It is proven by the testimony of witnesses called by
both parties that this apron or incline had been in use
at that point by the public for years before the time
of the accident. Eck, a witness for appellant, swore
that he had been acquainted with it about ten years
before the accident in question. Appellee's uncon-
tradicted testimony is that he had passed over it prior
to the accident but not within "half a year or a year or
so" before he was injured. It is certain, therefore,
that the apron had been in use there as a passageway
for the public for years, and that appellee knew it and
had used it. Eight witnesses besides Dorn and ap-
pellee testified that it was out of repair and out of
position at various times, from two to six months prior
to March 17, 1901. Without doubt the public was per-
mitted to use it as a part of the sidewalk for years,
and under the facts and the law it was incumbent on
appellant to keep it in a reasonably safe condition for
persons passing over it and using ordinary care for
their own safety.

The preponderance of the evidence, we think, shows
that this incline or apron had been out of repair for a

sufficient length of time to amount to constructive notice upon appellant of the condition of the apron at the time appellee was injured. ''The rule of law is, that notice of the unsafe condition of a sidewalk may be applied, if the defects complained of have existed for such a length of time that the municipal authorities of the city or village, or any of its officers or agents, whose duty it was to give notice thereof to the city, by the exercise of reasonable care and diligence, might have known of such defect.'' Brownlee v. Village of Alexis, 39 Ill. App. 135-143; Hearn v. Chicago, 20 Ill. App. 249; Sheridan v. Hibbard, 19 Ill. App. 421; Aurora v. Dale, 90 Ill. 46; Aurora v. Hillman, 90 Ill. 61.

Appellee and the witness Dorn who was with him at the time of the accident testified that at the time and place of the accident the street lamp was not lighted and the place was dark. Several witnesses called by appellee swore that it was the custom up to the time of the accident to put out the electric lights on that circuit on Twenty-sixth street from Wentworth avenue to Princeton avenue at about twelve o'clock at night.

It appears, we think, from the evidence on behalf of appellee that appellee had a clear right of action against appellant. The trial court did not err, therefore, in denying appellant's motion to instruct the jury to return a verdict of not guilty.

On behalf of appellant a number of witnesses were introduced upon the question of the condition of the apron. Much of the testimony was negative and valueless in character. Appellant also proved by the testimony of residents in the neighborhood of the place of the accident and the testimony of police officers that at or about that time, the location of the accident was well lighted and that the electric lamps were lighted all night. Appellant also proved by the officers who took appellee to the hospital after the accident that appellee said to him that he slipped on the apron and fell. One police officer swore that appellee told

him that he slipped, when he was in the house lying on the lounge, and that at that time Dorn also gave a different account of how the accident happened than that given on the trial. Both appellee and Dorn deny making any such statements.

This court is asked on this contradictory evidence to say that the verdict of the jury is against the weight of the evidence, and to set it aside. This we cannot do. We are not convinced after a careful study of the record that the verdict is against the weight and preponderance of the evidence.

Error is assigned upon the rulings of the court in allowing counsel for appellee to ask appellant's witnesses Eck, Fenton and Mrs. Schultz as to their knowledge of the condition of other aprons in the immediate vicinity of the one in question. Conceding that the questions called for immaterial facts, we do not think appellant suffered any harm from the rulings, or the testimony given in answer to the questions. The rulings were not reversible errors. Nor do we think the court committed reversible error in striking from policeman McGrath's testimony the following words in regard to the brightness with which the electric light was burning: "so bright, he thought, he could have read a newspaper there" and that "he thought it (the light) was pretty near as bright as day."

The criticisms made by counsel for appellant upon the second and third instructions given to the jury at the request of appellee are, in our opinion imaginary and spectral and without substance. The objection is that the words, "sidewalk or apron," are used in the instructions and that the word "sidewalk" has no application to the apron; and therefore the instructions could have no other result than to confuse and mystify the jury.

The law, in our opinion, justifies the designation of an apron or incline used as this was for a walk down from the sidewalk to the street crossing, as a

sidewalk. It was used for the purpose of a sidewalk for foot, passengers and no other purpose. Furthermore, it is somewhat peculiar, to say the least, for counsel for appellant to request instructions three, nine and eighteen given at their request, touching the duties of appellant with respect to "sidewalks," and then come into this court and say that the use of that term in instructions was confusing and misleading to the jury as applied to the facts of this case. The objection comes with poor grace from appellant, under the circumstances, and might be passed unnoticed with propriety.

It is urged that the damages allowed appellee, $7,500, are excessive.

Without stating in detail the testimony given by Doctors Eck, Trenchard and Faber, the last-named being selected by the court to make an examination of appellee, as to the history of the injury received by appellee, the course of treatment and the operations performed on appellee's leg, and appellee's condition at the time of the trial, nearly four years after the accident, it appears that as results of the injury appellee has suffered great pain for long periods of time, that his leg is about an inch and a quarter shorter and much enlarged, the bone is diseased, that there is a chronic inflammation of the ankle joint, the veins of the leg are enlarged and weakened, the bone is inflamed, and there is a running sore, and that no further operation short of an amputation of the limb either below the knee or possibly above the knee or at the knee joint, would be of any benefit. The leg in its present condition makes appellee a chronic invalid, able to do some work but unable to stand on his feet without suffering great pain. The testimony leaves no doubt that the injuries received by appellee are not only very serious but permanent. We cannot sustain appellant's contention that the amount assessed by the jury as damages indicate partiality, prejudice or misconception of the

evidence on their part; nor do we consider the amount excessive under the evidence.

We find no reversible error in the record and the judgment is affirmed.

*Affirmed.*