## Jacob Wordorski, Appellee, v. Illinois Steel Company, Appellant.

### Gen. No. 5439.

1. MASTER AND SERVANT—*who are fellow-servants.* Members of a gang engaged in piling iron although strangers to each other are fellow-servants.

2. MASTER AND SERVANT—*what not ordinary manual labor.* Held, that the piling of hot steel plates might properly be found by the jury not ordinary manual labor where it was done in a mill at night, by artificial light, amidst a mass of steam, and if the injury sued for be the result of the master not having employed experienced and skillful labor a recovery will be sustained if the servant injured did not know or might not have known by the exercise or ordinary care of the inexperienced and unskillful character of the servants causing the injury.

3. EVIDENCE—*when opinion competent upon question of danger.*

If the circumstances surrounding the doing of work are far beyond the experience of an ordinary juryman it is competent to inquire of one experienced in such work whether it was dangerous to have an inexperienced man doing such work.

4. EVIDENCE—*when irresponsive and incompetent answer will not reverse.* Such an answer will not reverse in the absence of a motion to strike.

5. VERDICTS—*when not excessive. Held,* in an action on the case for personal injuries, that a verdict for $7,250 after being reduced by *remittitur* to $5,250, was not excessive where it appeared that the plaintiff as a result of the injury suffered a hernia, varicose veins, a blood clot in the leg, and that a permanent injury affecting his ability to do heavy manual labor resulted.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. CHARLES B. CAMPBELL, Judge, presiding. Heard in this court at the October term, 1910. Affirmed on *remittitur.* Opinion filed April 25, 1911. Rehearing denied May 25, 1911. *Certiorari* denied by Supreme Court (making opinion final).

GARNSEY, WOOD & LENNON and JOHN R. COCHRAN, for appellant; KNAPP & CAMPBELL, of counsel.

BARR, McNAUGHTON & BARR, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Appellee was injured on the night of September 4, 1908, while he was at work in the merchant mill of the Illinois Steel Company, appellant. He brought this suit to recover damages for said injuries. The first count of the declaration charged that appellant so carelessly and improperly maintained and operated a certain pile of iron and steel plates that, through the negligence of appellant in that behalf, a large plate of iron or steel fell upon appellee and he was thereby injured. The second count charged that appellee was ordered by appellant to pile up plates of iron and steel and that appellant through its servants, who were not fellow servants of appellee, permitted said plates to be handled in an unsafe manner and in such a dangerous manner as to render them liable to injure ap-

pellee while working about the plates, which conditions were known to appellant and not to appellee, and that appellant permitted one of said plates to move upon appellee and he was knocked down and injured. The third count charged that appellee and other workmen of appellant were engaged in moving certain steel plates in its mill; that appellant hired other and inexperienced and incompetent men to help in moving said plates, which inexperience and incompetency was known to appellant and not to appellee; that said inexperienced men were unskilled and awkward in handling said plates and this rendered it unsafe for appellee to perform said work; that it was the duty of appellant to warn appellee of the danger of working with said men, but that it negligently failed to do so and while appellee was piling said plates by order of appellant with due care for his own safety, one of said inexperienced and incompetent servants, not a fellow servant of appellee, so negligently handled said plates as to cause one of them to move upon the plaintiff, and by reason of the negligence of appellant and the inexperience and incompetency of said servant moving said plate, the same moved upon the appellee and struck him in the abdomen and other parts of the body and knocked him down and injured him severely and he suffered a double hernia. The fourth court alleged that said plates were so hot that it was necessary for each man to use tongs in taking hold of a plate; that appellant ordered appellee to work with other new, incompetent and inexperienced men, and, while appellee was piling plates and lifting a plate with due care for his own safety and not knowing the danger of working with said men, appellant through said new, inexperienced and incompetent servants, not fellow servants of appellee, allowed said plate to move, when appellant knew or by reasonable care might have known that said men were inexperienced and incompetent and that the piling of said plates by said inexperienced and incompetent servants was dangerous

and liable to injure appellee and others; and that by reason of such negligence of appellant in causing appellee to work with said inexperienced and incom. petent servants, not fellow servants of appellee, one of said plates slipped upon appellee and he was knocked down and injured. An additional count charged that it was the duty of appellant to afford appellee a reasonably safe place to perform the work of moving and piling steel plates in which he was engaged in the employ of appellant, and reasonably safe means for performing said work; that appellant caused other servants, who were inexperienced and incompetent, to help in moving and piling said plates, which inexperience and incompetency was, or by reasonable care might have been, known to appellant and was unknown to appellee; that said inexperienced men were unskilled and awkward in handling said plates and incompetent to do the work in a reasonably safe manner, and that said work was dangerous for incompetent and inexperienced servants to perform, as appellant well knew and that the inexperience and incompetency of said servants rendered it unsafe for appellee to assist in piling said plates, as appellant knew or might have known by the exercise of due care and which appellee did not know; and that appellee in the exercise of due care for his own safety, while acting under the orders of appellant, was struck and knocked down by one of said plates through the negligent and incompetent handling of the same by one of said inexperienced and incompetent servants, and said incompetent and inexperienced servant threw or pushed said plate against appellee and struck him in the leg or foot, and appellee was knocked down upon a pair of tongs which he had in his hand, and was thereby injured by the inexperience and incompetency of said servants, and he suffered a double hernia and internal injuries and was rendered unable to work, etc. Appellee had a verdict and a judgment for $7,250 from which the defendant below appeals.

The evidence favorable to appellee tends to show the following facts. There were in the merchant mill three or four platforms made of iron rails placed close together. On one side of each of these platforms certain steel plates just from the furnace and at a white heat, were piled up. These plates were from twenty-five to thirty feet long, six inches wide, about three quarters of an inch thick and each weighed 350 to 400 pounds. After they had been so placed water was poured upon them till they were partially cooled. It was then the duty of a gang of six men to move each plate across to the other side of the platform and make a pile thereof. Afterwards other men took them from this pile to a machine near by where they were cut into short plates to be used in binding together railroad rails at their joints. The plates were still so hot when moved across the platform that they were required to be moved by the use of iron tongs about two feet long. The moving or sliding of these hot plates across the platform evidently made the whole platform hot, and it was called "the hot bed." Much steam was engendered by the pouring of water upon said plates when at a white heat. The place was so hot that one gang of men could only keep at work a little while. When one gang of men had piled fifty plates on the second pile above mentioned, they quit work and stepped aside to rest and cool themselves while another gang of six men moved fifty plates across the hot bed. At the time appellee was injured the pile being made of plates so moved across the hot bed had reached the height of about three and one-half feet. The work of moving and piling the plates was divided among the six men in this way. One man stood at one end and another at the other end of a plate and each seized it with his tongs, and the two men moved the plate across the hot bed, and these men were known as the end men; the other four men stood in front of the pile which was being made and as the new rail was brought up to them they stepped over it and then each of the four

men took hold of it with his tongs and they lifted the plate and placed it on the pile. Care was needed in doing this because the plates were so hot and long and thin that they were liable to bend in the center and so might not readily lie in place upon the pile. Appellee had at different times for years worked in appellant's plant for appellant at different kinds of employment, and about two years before he was hurt had worked a month or two at piling plates. On the night in question appellee had not been in the employment of appellant, but was standing outside of the gate, waiting for employment if he should be needed. This gang was short of men and was filled up, and appellee was called in by the "straw boss" and ordered to pile plates. He was placed as one of the four men in the center. The two men at the end were Sienko and a man named John Rula or Koval. Sienko had worked at piling plates some time. After he had worked in the center a year and a half, he was placed on the end. The work on the end was considered more difficult and dangerous than in the center. Rula had worked at piling plates only one half day and one half night before that time, but had worked elsewhere in the merchant mill. The other three men had not worked before at that particular work, though they might have worked elsewhere in the mill. An inexperienced man can work in the center, but not upon the end. The other three men in the center with appellee were small men and on that account had difficulty in putting the plates upon the pile. As the four placed a certain plate upon the pile it bent in the middle and was liable to fall off. Sienko and Rula brought another plate across the hot bed. The other three men stepped back and stepped over the approaching plate. Appellee who was at the end next to Rula, remained at his place trying with his tongs to straighten the last plate upon the pile, so that it would not fall off. Sienko stopped his end of the plate a safe distance back, but Rula brought his end

against appellee and struck him with it in the back of
the ankle or the heel and quite seriously hurt him.
Appellee either fell down or fell over upon his tongs
and the end of the tongs struck him in the right groin.
He was taken away and taken home and the next morn-
ing examined by a surgeon in the employ of appellant,
who found not only the injury to the heel or ankle, but
also an inguinal hernia or rupture in the right groin.
He caused appellee to be moved to a hospital where
appellee remained about twenty days. The injuries to
the ankle or heel were speedily healed and appellee
found that it was proposed to perform an operation
upon him for hernia, and he thereupon returned to his
home, where he has ever since remained. The extent
of his injuries will be described later.

It is obvious that the members of the gang were
fellow servants of appellee. They were all strangers
to him, except Sienko. According to appellee's proof
they were all inexperienced in this work, except Sienko
and appellee. Appellant contends that this was the
most common kind of manual labor, to be likened to
the piling of wooden ties along a railroad, and, relying
upon Timm v. M. C. R. R. Co., 98 Mich. 226, Roepcke
v. M. C. R. R. Co., 100 Mich. 541, Nephew v. White-
head, 123 Mich. 255, and other like cases, appellant
contends that there can be no recovery for injuries re-
ceived for performing such work. In view of the
enclosed position within a mill at night with only arti-
ficial light, the mass of steam necessarily engendered,
the great heat of the place and of the steel and of the
bed or platform, and the weight of the hot and there-
fore still flexible plates, the jury might fairly find that
this was not common labor, but that it was dangerous
unless performed by men of experience and skill. The
rule laid down in Western Stone Co. v. Whalen, 151 Ill.
472, is thus summarized by the reporter: "Where a
master employs a servant to engage in a business
known to be hazardous, and where the proper and safe
discharge of the duty requires a high degree of care,

skill and diligence, the master will be held, in the selection of the servant, to the exercise of care reasonably commensurate with the perils and hazards likely to be encountered in the performance of the duty. And the master impliedly contracts with each servant that he has and will discharge that duty, and the servant may, without sufficient appearing to put him upon notice to the contrary, rely upon the due and reasonable performance of it by the master.''

In Fraser & Chalmers v. Schroeder, 163 Ill. 459, the doctrine there held is thus stated in the headnote: ''The master must assign the performance of a known dangerous duty to an experienced servant, and if he assigns such duty to an inexperienced servant, by whose unskillful performance another servant is injured, the master must be held to answer.'' The court there said: ''The description of the device by this and other witnesses makes it clear that the lever in the hands of an inexperienced man, during the lifting of heavy objects, renders it extremely dangerous to those turning the cranks. It is in proof that Buchin was wholly inexperienced in the performance of that duty, having never attempted it before. If Blae, the representative of the defendant, did not know these facts, he could have readily ascertained them by the use of even slight diligence before engaging in the work and before ordering him to do that which he knew might endanger plaintiff and others. The evidence showed that plaintiff had no previous knowledge of the competency or incompetency of Buchin, and he certainly had no opportunity to inquire into that fact after the order was given.''

In Klofski v. Railroad Supply Co., 235 Ill. 146, the court approved the following instruction:

''It was the duty of the defendant to use reasonable care to learn and know whether its servants were competent and fit for their work, so that it would be reasonably safe for the defendant's other servants to work with them without being exposed to unnecessary

danger to life or limb by reason of incompetency, if any; and if defendant's servant known as 'Scotty' was incompetent for his work, and if by reason thereof other servants of defendants were exposed to unnecessary danger to life and limb, and if defendant by reasonable care would have known of such incompetency and danger, if any, before the alleged injury to plaintiff, in time by reasonable care to prevent such danger, then it was defendant's duty to use reasonable care not to expose the plaintiff to the danger, if any, of working with such incompetent servant, if any.''

The court also there said: ''If defendant negligently employed an incompetent servant and set him to work with appellèe, thereby exposing appellee to danger from the incompetency of such servant, such a danger is not one of the ordinary and usual hazards of the employment which appellee assumed by his contract of hiring. If he assumed such danger at all, it would only be upon the supposition that he knew of such incompetency, and voluntarily without protest, continued in such employment. Whether he had such knowledge or ought to have had such knowledge was a question of fact for the jury.''

Applying these principles to this case, the evidence favorable to appellee would authorize the jury to find that it was negligence for appellant to employ and place at this work men who were inexperienced in its performance and that it was because of that inexperience, and therefore incompetency to perform this work, that the three men in the center with appellee released the plate from their tongs and stepped back when the plate was bent in the center and was liable to fall off, and that Rula swung his end of the next plate further than Sienko did and brought it against appellee's heel or ankle while he was still at work trying to straighten the plate on the pile so that it would not fall off. Appellant contends that appellee was negligent in not removing his tongs from the bent plate on the pile and stepping back with the others. This also was a question for the jury.

Appellant contends that these were all experienced men. Rula testified for appellant that he had worked at piling plates before. His evidence all considered, however, did not show that he had been regularly at that work, but that he had sometimes been placed there for a half day or a day, when the old hands did not come. The night foreman testified that appellee was the only new man in that gang and that all the rest were old hands. He did not, however, name the other three men nor did he know their names. He only knew them by number and he did not give their numbers. They were strangers to appellee and appellant did not call them. Said night foreman testified that he did not remember who the other men were. It was a question for the jury whether he knew that they were experienced at that work or had worked there before, and it is strange that they were not called by appellant. His entire examination shows that he only knows of Rula having been placed there temporarily at some times when other men were sick. He testified that Rula never worked in the center but only on the ends, while Rula testified that he had worked in the center as well as on the ends.

Appellee asked of Sienko various questions on the subject whether it was dangerous to have an inexperienced man working on the end. The circumstances surrounding the doing of this work were so far beyond the experience of an ordinary juryman that, under Donk Bros. Coal Co. v. Stroff, 200 Ill. 483; Gundlach v. Schott, 192 Ill. 509, and 2 Elliott on Evidence, sec. 1031, opinion evidence was competent. During said inquiry the witness gave one improper and unresponsive answer to a question to which an objection by appellant had been overruled. No motion was then made to exclude that answer, but at the close of the entire direct examination appellant moved to strike out each and every answer to the questions to which objections had been made and overruled, and that motion was denied. As the general course of the

inquiry had been competent, we do not think that the court was called upon by that general motion at the close of the direct examination to go back and consider all the testimony of the witness and recall this particular improper answer and exclude it, but appellant should have made a special motion as to this particular answer. While there were some other questions and answers where appellant's objections might have been properly sustained, yet appellant was not harmed by the rulings. Appellant complains of the first instruction given at the request of appellee. This instruction was the one approved in Klofski v. Railroad Supply Co., *supra,* hereinbefore set out, save for a change in the name of the servant and other slight verbal alterations.

It is contended that the damages are excessive. The rupture or hernia was six inches in length in the right groin and two or three inches wide. The physician who testified for appellee pronounced it a large hernia and a serious injury. He also testified that he found upon appellee varicose veins in the right leg and a thrombus or blood clot on the right leg about five inches below the knee joint, and that the varicose veins, the thrombus and the hernia could have been caused by traumatism or by falling upon the end of iron tongs; that in his present condition appellee cannot do any heavy manual labor; that he must wear a truss and a bandage or elastic stocking; that he will never be able to do heavy manual labor again without a good deal of operating; that he would require an operation to cure the hernia and another to cure the varicose veins and that such operations would be attended with some danger and that even then the conditions might return. Appellee testified that none of these conditions existed prior to this accident, but that he was entirely well prior thereto. He was 49 years old, had served in the Austrian army, had worked for appellant off and on about seven years, and was earning from $1.90 to $2.10 per day and $1.90 when piling

plates.   He has to have his foot held up by a strap at night in order to sleep.   Appellant's surgeon testified that appellee did not complain of the hernia when he first visited appellee; and that upon an examination of the hernia he believed it to be an old rupture.   Another surgeon for appellant who treated appellee a few days later testified to the same conclusion.   They also testified that in their opinion he could be cured by an operation.   Appellant's surgeon who first treated appellee, testified that he examined appellee over a year later and found another hernia on the left side and therefrom concluded that he had a lax abdominal wall.   Two surgeons examined appellee after that evidence was given and testified that they found no hernia on the left side and no indications that there had ever been a hernia on the left side.   It must be assumed that the jury found that this was not an old hernia, but that it was caused by falling upon the tongs at the time in question.   We conclude from the proof that the injury can be cured or greatly relieved by an operation, and that appellant offered and intended to have such an operation performed, and that appellee refused to permit it to be done.   Upon a review of the entire proof we conclude that we ought not to permit the judgment to stand for the full amount.   This opinion will be lodged with the clerk and counsel notified, and if within ten days appellee remits $2,000 of the judgment, the judgment will be affirmed in the sum of $5,250 at the costs of appellee; otherwise, it will be reversed and remanded for a new trial.

A *remittitur* having been filed herein in the sum of $2,000 the judgment is therefore affirmed in the sum of $5,250 at the costs of appellee.

*Affirmed on remittitur.*