## Cincinnati, New Orleans & Texas Pacific Railway Company v. Perkins.

(Decided June 20, 1924.)

### Appeal from Mercer Circuit Court.

1. Carriers—Evidence that Others Killed in Accident Had no Bearing Upon Issue of Damages.—In action against carrier for injuries to passenger, where ordinary negligence was admitted, evidence that other persons were killed in accident was inadmissible; the only issue being extent of injuries.

2. Trial—Instruction Pointing Out and Directing Special Attention to Evidence as to One Alleged Physical Injury Erroneous.—Part of an instruction pointing out and directing special attention to evidence as to one of plaintiff's alleged physical injuries was erroneous.

3.   Damages—$5,000.00 Held Excessive for Cuts, Bruises, and Nervous Shock.—A verdict of $5,000.00 for cuts, bruises, nervous shock, and disturbance of menstrual flow held excessive.

E. H. GAITHER for appellant.

J. L. RICHARDSON and CHAS. CARROLL and J. F. VANARSDALL for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellee was a passenger on appellant's north-bound passenger train on the 6th of April, 1921, when, because of the failure of appellant's section gang to properly brace one or more of the rails under which they were placing new ties, the coach in which appellee was riding was caused to careen and strike against the side of a cut or cliff near the track, as a result of which she was injured.

The petition charges gross, wanton and reckless negligence. The answer denies such negligence, but does not deny ordinary negligence. It also denies the extent of plaintiff's injuries, or that she was seriously or permanently injured, and denies she is entitled to recover exemplary damages.

Ordinary negligence being confessed, the only real issue between the parties was the extent of the plaintiff's injuries and the amount of her recovery.

In the original petition it is alleged that the plaintiff as a result of such negligence was thrown with great force and violence against the sides and floor of the coach, and against the seats therein, and was struck by pieces of the coach, whereby she was seriously, painfully and permanently injured about her head, face, body, arms and legs, and her nervous system greatly and permanently shocked.

In an amended petition to make more specific the nature of her injuries she further alleges that as the direct result of the injuries received, and because of the shock to her nervous system, her menstrual flow was seriously affected and caused to be irregular, by reason of which her health had been seriously and permanently injured, and that she has since the accident suffered as a result thereof and will continue permanently to so suffer great mental and physical pain.

The extent of her injuries were all put in issue, and on a trial the jury returned a verdict for plaintiff of

$5,060.00, the $60.00 probably being for alleged damage to some of her personal effects.

Three grounds for reversal are relied upon, (a) the admission of incompetent testimony; (b) erroneous in-structions; and (c) excessive damages.

The three questions really all revolve around the last, for although there was incompetent evidence ad-mitted for plaintiff, and although there was at least in part an erroneous instruction, yet these errors might not be deemed in and of themselves sufficient to authorize a reversal, except for the apparently excessive verdict under the evidence.

The plaintiff was permitted, over defendant's objec-tion, to state while on the stand that after her injury she had seen on the train the corpses of three or four per-sons killed in the accident, and that one of them was a man sitting in the third seat behind where she was sit-ting. Keeping in mind the only issue was the extent of her injuries, it is apparent this evidence of the fact that in the same accident others had been killed, or more seri-ously injured, could have had no bearing upon that issue, but could only have tended to inflame or excite the minds of the jury, and might have induced a larger verdict for the plaintiff than would otherwise have been returned.

Likewise in an instruction the court, after directing a verdict for plaintiff for such sum in damages as would fairly compensate her for any mental or physical suffer-ing theretofore endured, or which it was reasonably cer-tain she would thereafter endure as a result of her in-juries, and also authorizing a recovery by reason, if any, of the impairment of her power to earn money, went fur-ther and said:

"And if you believe from the evidence that as a result of said injuries so received, if any, her men-strual flow was affected or caused to become irregu-lar, and by reason thereof her health was impaired, you may take that into consideration in estimating the damage, if any, she received."

Manifestly the quoted part of the instruction was er-roneous in that it pointed out and directed especial at-tention to the evidence as to one of the plaintiff's al-leged physical injuries. The instruction in general terms had already directed a recovery for her physical injuries, and this addition to it might have been thought authority for an additional recovery for this particular physical

injury. At any rate, it was error to thus point out and give prominence to evidence of a particular injury.

Plaintiff in her evidence states she received a cut on the back of her head, a cut on her face, a mashed finger, and was hurt in the chest and on the right shoulder, and says she suffers from nervousness· as a result of the shock.

Her home physician at Louisville, whom she did not see until the second day after the accident, says that when he saw her on the morning of that day she was in a general nervous condition and had cuts and bruises on her body, the deepest of which was back of her ear; that he applied a surgical dressing to the injury back of the ear and used a lotion on the bruised places, and gave her a sedative; that he saw her sometimes twice a day up to the 24th of April, and after that sometimes called at her home and at other times treated her at his office; that her nervous condition since the injury has been bad, and that she was not nervous before; that as a result of this accident, in the opinion of the witness, she has since had a disturbance at the menstrual period as a result of the shock to her nervous system, but that in time she might recover from that condition; that with proper treatment she might or might not be cured of this trouble.

On the other hand the evidence is that plaintiff a few minutes after the accident was sitting on the bank near the railroad track nervous and excited, but apparently uninjured except for a cut back of her ear, and one on her face; that shortly thereafter she walked quite a distance and boarded a Pullman car, and was then taken on that car from the point in Tennessee where the accident happened to Somerset, Ky.; that she went to the hotel at Somerset, where the cut on the back of her head was dressed by an army surgeon, who happened to be at the hotel; that she went down to supper at the hotel that night, and down to breakfast the next morning, and during that day boarded a train and went to her home in Louisville, where she arrived that night, and that she did not call her family physician until the next day.

There was on the train with appellee, and in the·seat just opposite her at the time of the accident, a trained nurse, with whom she had become acquainted, and who accompanied her from the point of the accident to Somerset and stayed all night at the same hotel in an adjoining room. She not only states they went down to supper that night and the next morning to breakfast, but she states

that during the trip the next day from Somerset to Louisville appellee sat up in the coach and showed no particular injury except she appeared to be nervous; that at Somerset appellee undressed and witness did not notice any physical injury except a slight cut behind the ear and a very slight scratch across the chest, and she complained of no injury except the cut behind the ear, which was dressed at that place by the army surgeon.

The army surgeon gave a deposition in this case, taken on interrogatories and cross-interrogatories, but only that part of his deposition in answer to the cross-interrogatories is copied in the transcript.

Another Louisville physician, who examined plaintiff on the 26th of June, 1921, testified that she then had a few minute scars, one on her nose and one behind the right ear; that she complained of pain in the right forefinger and in her right shoulder and chest, as well as of nervousness, but there was no external evidence of injury; that she had no scars and no indication of severe injury, and there could not have been such or there would have been confirmation of it. That her chest had been bruised was evidenced by a slight discoloration, but it could not give her any future trouble, and there was no evidence of injury to the shoulder. That she was nervous as persons generally are who are being examined by two physicians, although her pulse was normal. She stated to the doctor that there was nothing the matter with her except these bruises, but upon being whispered something by her husband, who was present, she then said her menstrual period was two or three days delayed, but did not claim to have missed any period. That such an accident might cause the menstrual period to be upset or disturbed, or to be delayed or hastened a day or two, but if that condition continued it would be only normal.

He also stated that in conference with her physician, under whose care she had been, that physician told him he found nothing which would indicate plaintiff had received any permanent injury.

We then have a statement of her own physician that one of her injuries may or may not be permanent, depending upon future proper treatment; and we have the statement of another physician, who examined her two months thereafter, that none of her injuries are permanent or serious, and that her own physician had said as a result of a consultation between them after such examination that he discovered nothing to indicate permanent

injury. These facts taken in connection with the undenied evidence that a few minutes after the accident she was sitting on the bank with apparently only a few slight cuts and bruises, and the further fact that she walked some distance and boarded a Pullman car a short time thereafter and traveled some distance to Somerset, and there went from her room in the hotel to supper that night and to breakfast the next morning, and on that day traveled one hundred or more miles from Somerset to Louisville, and did not even call her physician after reaching home that night, impels us to hold that the $5,000.00 verdict in this case is excessive.

Particularly is thus true in the light of the fact that the court permitted incompetent and damaging evidence, which might materially have increased the verdict, to go to the jury, and submitted in one of its instructions authority to recover for a specific personal injury, and directing especial attention to the evidence as to that injury.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.