## Louisville & Nashville Railroad Company v. Parsons.

(Decided February 26, 1926.)

### Appeal from Bell Circuit Court.

1. Master and Servant.—Instruction was erroneous in failing to require that master knew or could have known of defect in appliance.

2. Master and Servant—Railroad Required to Keep Brakes in Reasonably Safe Condition for Intended Use.—Railroad company is required to keep brakes on cars in reasonably safe condition for use by employee for purpose for which they were intended, and not for some other purpose for which the employee used them.

3. Trial—Instruction as to Injured Employee's Attempt to Use or Apply Car Brakes Held Improper, in Absence of Evidence.—Where brakeman alleged he was injured while using brake in discharge of his duty, but testified that he was injured by taking hold of brake lever to steady himself while passing from one car to another, instruction, referring to his attempt to use or apply brake, was erroneous under evidence.

4. Damages.—Evidence, in brakeman's action for injury through being struck in abdomen by brake lever, held not to warrant instruction on permanent injury.

5. Damages—Instruction, Permitting Injured Employee to Recover Concurrently for Loss of Time and Impairment of Earning Power, Held Error.—Instruction, permitting injured employee to recover concurrently for loss of time and impairment of earning capacity, without directing that the allowance for such impairment of earning capacity begins when employee's loss of time resulting from his disability ends, held error.

6. Master and Servant—Proof Held Not to Conform to Allegation of Injury to Brakeman in Using Brake.—Where brakeman alleged that he was injured while using brake in line of duty, but testified that he was struck by brake lever while using it to steady himself in passing from one car to another, defendant was entitled to instruction to find for it.

7. Master and Servant—Rule, Requiring Master to Furnish Reasonably Safe Appliances, Inapplicable, where Servant Uses Appliance

for Purpose Not Intended.—The rule, requiring a master to exercise ordinary care to furnish his servants with reasonably safe place and appliances, does not apply, where servant departs from the master's plan, adopts one of his own, and uses an appliance for a purpose for which it was not made or intended by the master.

5. Damages.—Master is not responsible to injured employee for physical condition arising from previous injury elsewhere, except to extent injury aggravated previous injuries.

WOODWARD, WARFIELD & HOBSON, LOW & BRYANT and ASHBY M. WARREN for appellant.

JAMES M. GILBERT, JOHN D. CARROLL and JOHN S. CARROLL for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant, whom we will call defendant, seeks to reverse a judgment for $4,000.00 recovered against it by the appellee, whom we will refer to as the plaintiff. Plaintiff was employed by defendant as a brakemen, and it is claimed that on October 23, 1922, while he was engaged in releasing the brakes on a train of loaded coal cars, he received an injury when he attempted to use what he says was a defective ratchet brake, which brake would not work, and which threw him from the car, causing the injury complained of. In his report of the accident he says that he was letting off this brake, and that the catch caused the brake lever to slip, striking him on the abdomen and causing what he terms "bowel rupture." It appears that this was a brake on Michigan Central car 11216. That is the car that was indicated by the plaintiff in the report of the accident (written at his dictation and signed by his sister for him) as the one which occasioned the injury, but in his evidence he says that he does not now know what car it was and that this number given in the report of the accident, was given by some one else, and not by him. He does not, however, say it was not Michigan Central 11216, on which he was injured.

J. R. Feece, who was working with plaintiff at the time, did not see the alleged accident. The first Feece knew of the matter, he saw plaintiff stooped over and complaining of being hurt. Feece pointed out to conductor Marsee the car on which the plaintiff was injured, but says he doesn't now remember the number of the car, or

the initials. Marsee talked to the plaintiff just after the accident, and Marsee says plaintiff told him that he was letting off the brake at the time he received this injury. Plaintiff does not deny this conversation. Marsee says that the car in question was Michigan Central, 11216; that it was a new steel car; that it was in good condition; that he examined it and that in his presence and under his direction, the brake was operated, tightened up and released several times, and that it was in fine condition. Other witnesses testify to the same effect about this inspection.

Plaintiff alleged one case and proved another. The allegation of his petition is that he was injured while using the brake in the discharge of his duty, but in his testimony he didn't claim that he was either setting or releasing the brake, but that he was undertaking to pass from one car to another, without descending to the ground, and that he stepped over and took hold of the lever and jumped across from the foot board of one car to the foot board of the next. Parsons alleged he was injured while releasing the brake. He testified that he was not injured while releasing the brake, but while using it to steady himself. He had seized this brake handle to steady himself, as he says, and the brake was thereby released, causing the handle to fly around and hit him in the side. For the defendant, it is conclusively shown that it would be impossible for this brake handle to fly around; that if it were released and held outright, it would only strike the end of the car, and could not, by any means, fly around so as to strike the plaintiff.

Dr. Stark examined the plaintiff shortly after the accident. He complained of his side hurting him and that it was painful to the touch; but the doctor could not find any discoloration or other evidence of a blow. Dr. Johnson testified that he examined plaintiff on the day of the injury and found considerable swelling on the left side, but says nothing about any discoloration. Dr. Bailey also examined him that day, but he says he doesn't remember any swelling. He was also examined by Dr. Howard and Dr. Caywood, and all these doctors were very much puzzled by the case. They decided that the only way to account for the pain the plaintiff claimed to be suffering when there was no more outward evidence of injury, was that the plaintiff had suffered a ruptured bowel. They proposed to operate upon him and to open

his abdomen for the purpose of closing such rupture if any was found. Plaintiff refused to submit to the operation. The doctors seem now to be agreed that there was no rupture of the bowel else the plaintiff would have died.

Plaintiff introduced his brother as a witness. The brother says that the plaintiff's leg from his knee up to about his waist was swollen, with a red stripe, and a swollen place about the size of the upper part of his forearm, and that a ridge extended from his knee up about 18 or 20 inches, that it was red and swollen. His father, Joe Parsons, testified that he saw him; that he was swollen in the stomach and all bloodshot; that there seemed to be two streaks of this swelling, and a little vacancy between them. He said that plaintiff was confined to his home for a long time; then got about on crutches for about 4 months, and that after that, plaintiff was shorter in one foot than in the other for a good bit. He locates this hurt upon the plaintiff's right side. His father-in-law was introduced as a witness, and he locates the injury upon the left side. He said that plaintiff was swollen up in a "great big ridge;" that he could not tell just how wide, but something like the size of his arm. Plaintiff's brother, Melville, was introduced, and he could not say on which side of the plaintiff's abdomen the injury was; but he says there was a swollen ridge across his side about the size of his arm.

It seems strange to us that these relatives of plaintiff could so easily discover the wound on the plaintiff's body then and have such difficulty in exactly locating it now, and yet that the doctors at the hospital were unable to make any such discovery. We are not impressed by the evidence about the shortening of the leg.

The court presented the plaintiff's side of the case in instruction No. 1, which instruction was erroneous in that it failed to require the jury to believe that the defendant knew or by the exercise of ordinary care could have known of the defective condition of the brake, if it was defective. See C. N. O. & T. P. R. Co. v. Magee, 202 Ky. 722, 261 S. W. 243. This instruction contained further error in this that it required defendant to use ordinary care to keep the brakes on these cars in reasonably safe condition for the use of the plaintiff. The instruction should have said to keep the brakes on these cars in a reasonably safe condition for use by the plaintiff, for the purpose for which they were designed and intended. This brake was designed and intended for use

as a brake, not as a grabiron, and defendant was not required to keep it in a safe condition for use for a purpose other than that for which it was intended and provided.

In instruction No. 2, in view of the proof in the case, the court should not have said, "In attempting to use or apply the brake on said car," as there was no evidence that the plaintiff was attempting to use or apply the brake. Unless there is decidedly more evidence of permanent injury upon the next trial, the court will not give an instruction on that feature. The doctor who was asked about plaintiff's injury, said that he was unable to say whether it would be permanent or not. That was not such evidence of permanent injury as is required to warrant the giving of an instruction on permanent injury. See C., N. O. & T. P. R. Co. v. Ross, 212 Ky. 619; 279 S. W. —. If the evidence had warranted the submission of the question of permanent injuries, it was error to submit it in the form it was submitted in instruction 3, as that instruction permitted a recovery by plaintiff, not only for loss of time, but for the impairment of his powers to earn money without directing that the allowance for this impairment of his power to earn money should begin when his loss of time resulting from his disability ends. See L. & N. R. R. Co. v. Kirby, 173 Ky. 399, 191 S. W. 113.

As we have stated, the plaintiff alleged one case and proved another, and in that condition of the pleading and the proof, the court should have instructed the jury to find for the defendant.

In Zornes v. C. & O. R. Co., 176 Ky. 768, 197 S. W. 438, an employee was injured while attempting to descend from a trestle by using a chain which pulled loose, and he fell to the ground. The trial court instructed the jury to find for the defendant, and this court affirmed the judgment. In Smith v. Trimble, 111 Ky. 861, 64 S. W. 915, recovery was denied to a paper hanger who, not in the performance of his duty, stepped on a balcony which fell. In Ky. Wagon Mfg. Co. v. Gossett, 142 Ky. 842, 135 S. W. 394, recovery was denied to a workman who was injured by the giving way of a guy rod upon which he stepped while painting a tower, as he was putting the guy rod to a use for which it was not designed. In L. H. & St. L. Ry. Co. v. Wright, 170 Ky. 230, 185 S. W. 861, a judgment in favor of the fireman was reversed, where the fireman was injured as the result of stumbling over a clinker hook. What the court held in that case indicates that the rule which requires the master to exercise ordi-

nary care to furnish his servants with a reasonably safe place and appliances, has no application where the servant departs from the master's plan, adopts one of his own, and uses an appliance for a purpose for which it was not made, or intended by the master. In Broadway Coal Mining Co. v. Render, 119 S. W. 198, we said:

> "The duty of the master to furnish a reasonably safe place applies only to the place which the employee is required to use for the purpose of performing his duty."

In the plaintiff's testimony, he said that he took hold of the lever to steady himself, in getting on the car, and that it is customary to do so, but in the Wright case, this court held that, if it be a fact that firemen frequently perform the duties which plaintiff there was engaged in performing in the same manner he adopted, that would not alter the case. In I. C. R. R. Co. v. Mercer, 24 Ky. L. R. 908, 70 S. W. 287, 28 K. L. R. 3, 88 S. W. 1054, Mercer took hold of a bell cord in getting to his seat in the cab. The cord broke and he fell. Twice this court reversed judgments in his favor, and held that a peremptory instruction should have been given for the railroad company. In this case, defendant admits that if he had been releasing the brake, it would not have injured him.

> "Q. Then, if you were releasing the brake it could not have hit you in the side, could it?
> "A. No, sir; if I had been releasing it. I had hold of the lever. I was not releasing the brake."

This shows that if plaintiff had used this lever for the purposes for which it was intended, he would not have been hurt. There is no suggestion of any want of, or defect in any of the ladders, grabirons or handholds which the law requires shall be provided for the use of trainmen in climbing about on these cars.

The plaintiff had some years before this accident sustained an injury to his left lower abdomen and bowels, which resulted in his having thereafter some difficulty in voiding his urine, and an inflammatory condition of the muscles of his left leg. Even previous to that he had strained himself in lifting something, and that was followed by a soreness in one of his testicles. From this we see the man was not without defects before the hap-

pening of this accident. Under no circumstances was the defendant responsible to the plaintiff for his condition except to the extent, if any, that his previous injuries had been aggravated or extended by this accident.

The judgment is reversed and the cause remanded for a new trial.