## Chesapeake & Ohio Railway Company v. McCullough.

(Decided June 21, 1929.)

(As Modified, on Denial of Rehearing, September 27, 1929.)

BROWNING & REED for appellant.

WAUGH & HOWERTON for appellee.

Opinion of the Court by Drury, Commissioner— Reversing.

The Chesapeake & Ohio Railway Company prosecutes this appeal from a judgment for $5,000 recovered against it by A. J. McCullough. Just after noon on May 20, 1926, A. J. McCullough and his daughter were returning to their work in the city of Ashland, and were traveling in an automobile. They had to cross to the north side of the tracks of the Chesapeake & Ohio Railway, and they were expecting to cross at Twenty-Second street. This particular crossing is very much used, and the Chesapeake & Ohio Railway has for a number of years maintained crossing gates thereat, which are usually operated by a watchman stationed in a nearby tower, but which may be operated from the ground. As these parties ap-

proached this crossing on this occasion, the gates were up and open. They started to cross. Just then a passenger train was rapidly approaching this crossing from the west. The automobile was stopped just about the time the front wheels were on the track. Whether the driver of the car, in the excitement, killed the engine or the machine was stopped by a signal from the watchman of the railway company is sharply disputed; but, anyway, it stopped, and the parties in it got out and retreated to places of safety. The train struck the machine, but the damage to that has been settled, and that question is behind us.

This suit was begun by A. J. McCullough, who claims that, in getting out of this automobile, he struck or was thrown against some part of it, and injured his right leg, which has, according to him, resulted in great pain and anguish to him, in permanent injury, in great impairment of his power to earn money, and in shock to his nervous system, which has destroyed, and will destroy, his health, etc. He sought a judgment for $15,000 for the injuries he claims he sustained, and the jury awarded him $5,000. Mr. McCullough was not struck by the train, nor was he struck by the automobile when the train pushed it off the track. Just after this happened, he was lame in his right leg, and he supposes he struck it against some part of the automobile in getting out. He does not know how he hurt it. He walked home without aid. He made no examination of his leg that day, and perhaps would not have done so the next day, but Dr. Eaton was called to see his daughter, and, while he was there, Mr. McCullough had him look at his leg. Dr. Eaton says he found the leg bruised, discolored some, and red from about two inches above the knee all the way down to the ankle. He says the veins of Mr. McCullough's leg were swollen and perceptible to the eye, that he treated his leg, and has had Mr. McCullough under treatment and observation since that time. It is admitted that Mr. McCullough is pale and anemic. He has lost some weight, and he says that he is not able to work much more than half the time.

There are five doctors who testified in this case, and it seems to be thoroughly agreed that Mr. McCullough is suffering now from varicose veins in his right leg. He attributes this condition to the injury of that leg which he says he received when he jumped out of the automobile. It may be said to be established by the evidence in this case that varicose veins are of slow development.

Dr. Salmon testifies of this affliction: "It is necessarily of slow development." Dr. Gamble testifies: "True varicosity is a matter of slow development and this is a case of true varicosity in my judgment." Dr. Smith testifies that varicosity is ordinarily a matter of slow development, yet Dr. Eaton testified that he saw this man on the day following the accident, and we have already stated what he said about the condition in which he found the veins of this man's leg. He was asked this question, and made this answer: "Have you ever had a case of varicosity develop in twenty-four or forty-eight hours?" His answer was: "None except this one. He had them in that time."

However, Dr. Eaton admitted on cross-examination that, after examining Mr. McCullough, he made a statement to the defendant, in which he said: "I am unable to say that the condition of the blood vessels came from the injury as this condition is more or less common to advanced age." He also admitted in that cross-examination that he had said on the former trial that varicose veins were common in persons of middle age, and that ordinarily they are matters of gradual development. Dr. Eaton was asked this question and made this answer: "In your opinion, is that condition, varicosity, the result of that accident?" He said: "In my opinion, yes, sir." In answer to a long hypothetical question, Dr. Smith said that the injury was the cause of Mr. McCullough's condition. However, the effect of Dr. Smith's answer to this hypothetical question is much weakened by the fact that the question failed to contain the statement that this injury was received on the 20th, and that this varicose condition existed on the following day.

Dr. Eaton's statement is weakened by his having said that he was unable to say that the condition of the blood vessels in McCullough's leg came from the injury. Both of these doctors who were introduced by McCullough admit that varicose veins are of slow development, and, against their evidence, we have the evidence of Dr. Salmon, who testifies positively that varicose veins are not of traumatic origin, and that it would have been impossible for Mr. McCullough to have varicose veins on May 21 as the result of an accident the day before. To the same effect is the evidence of Dr. Gamble, but there is in the evidence of Dr. Salmon one statement which possibly reconciles and explains all these apparently contradictory statements, and that is his assertion that Mr. McCul-

lough may have had this condition beforehand and not known it.

From this record it appears that 20 per cent. of the people of Mr. McCullough's age have varicose veins. Probably many of them have them for years before their attention is called to their condition. All the doctors agree that Mr. McCullough will not be relieved of this condition, unless it be by an operation; and some are not sure that that would relieve him. It seems to be agreed that it is not a serious operation. It might be said that, unless he is operated on, he has a trouble that will be permanent. But there is not a line of evidence to show that it will impair his earning power, except the evidence of McCullough himself. None of the doctors says that it will impair his earning capacity, and one or two testify he will suffer no serious inconvenience. One may suffer a permanent injury, and yet suffer but very little, if any, impairment in his earning capacity. A man may lose one or two joints of his little finger. He is permanently injured, but his earning power is perhaps not affected in the least.

About the only direct medical evidence on this question in the record is this: "Would you say that the varicose condition here is such as to prevent Mr. McCullough from performing his ordinary work?" Answer: "No, sir." To sustain this verdict, in view of its size, it would be necessary for Mr. McCullough to establish by positive and satisfactory evidence that his earning power has been permanently impaired. See Augustus v. Goodrum, 224 Ky. 558, 6 S. W. (2d) 703; Bray-Robinson Clothing Co. v. Higgins, 219 Ky. 293, 293 S. W. 151; Louisville & N. R. Co. v. Parsons, 213 Ky. 432, 281 S. W. 519; Cincinnati, N. O. & T. P. R. Co. v. Ross, 212 Ky. 619, 279 S. W. 1075.

When we measure this judgment by other judgments which this court has reversed for excessiveness, we are forced to the conclusion that this verdict is excessive. A $3,000 verdict was reversed in Kentucky T. & T. Co. v. Downing, 152 Ky. 25, 153 S. W. 32; a $3,000 verdict was reversed in Lexington Ry. Co. v. Woodward, 106 S. W. 853, 32 Ky. Law Rep. 653; a $3,000 verdict was reversed in Kentucky & I. Bridge & R. Co. v. Singheiser (Ky.) 115 S. W. 192; a $2,500 verdict was reversed in Trosper Coal Co. v. Crawford, 152 Ky. 214, 153 S. W. 211; a $2,000 verdict was reversed in the case of L. & N. R. Co. v. Law, 21 S. W. 648, 14 Ky. Law Rep. 850; a $4,000 verdict was reversed in the case of South Covington & C. St. R. Co.

482

v. Ware, 84 Ky. 267, 1 S. W. 493, 8 Ky. Law Rep. 241; a $5,000 verdict was reversed in Louisville R. Co. v. Roser (Ky.) 122 S. W. 149; a $5,000 verdict was reversed in the case of Cincinnati, N. O. & T. P. Ry. Co. v. Perkins, 204 Ky. 334, 264 S. W. 758; a $7,225 verdict was reversed in Phillips Co. v. Pruitt, 82 S. W. 628, 26 Ky. Law Rep. 831; a $5,000 verdict was reversed in Louisville & N. R. Co. v. Roberts, 208 Ky. 692, 271 S. W. 1036.

In all of these cases, the judgment was reversed because of the excessiveness of the recovery, and a reading of those cases and a comparison of the physical injuries complained of there with the physical injuries complained of here forces on us the conclusion that this verdict is excessive. Cases involving injuries which it is claimed resulted in varicose veins are: Illinois C. R. Co. v. Cole, 165 Ill. 334, 46 N. E. 275; Root v. Cudahy Packing Co., 94 Kan. 339, 147 P. 69; Chicago v. Loebel, 130 Ill. App. 487; Id., 228 Ill. 52, 81 N. E. 796; Murphy v. Southern P. Co., 31 Nev. 120, 101 P. 322, 21 Ann. Cas. 502; Beall v. Louisville Home Tel. Co., 166 Ky. 345, 179 S. W. 251; Sterler v. Busch, 197 Iowa, 231, 195 S. W. 369; Allen v. Autenrieth (Mo. App.) 280 S. W. 79; Krisinger v. Creston, 141 Iowa, 154, 119 N. W. 526; Jensen v. Schlenz, 89 Wash. 268, 154 P. 159; Chapman v. Atlantic Ave. R. Co., 14 Misc. Rep. 384, 35 N. Y. S. 1045; Campbell v. North American Brewing Co., 22 App. Div. 414, 47 N. Y. S. 992; Wordorski v. Illinois Steel Co., 160 Ill. App. 390.

The judgment is reversed.