# Louisville & Nashville Railroad Company v. Foster.

(Decided June 21, 1929.)

158

ASHBY M. WARREN, WOODWARD, HAMILTON, WARFIELD & HOBSON, JESSE MORGAN and C. S. LANDRUM for appellant.

J. W. CRAFT for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On the night of August 1, 1925, a Ford automobile driven by Dr. R. L. Collins, and in which appellee was riding, while traveling the road from Karles to Hazard, Ky., was struck, where the road crossed the appellant's railroad tracks near Karles, by a freight train of the appellant. For the injuries he sustained in this collision, appellee brought this suit, and recovered a judgment of $1,000, from which this appeal is prosecuted.

The petition of the appellee as amended averred that the road on which he was traveling, and especially where it crossed the railroad tracks of the appellant, was a public road. Although the appellant traversed this allegation, the proof for the appellee established that the road at this point was a public road, and appellant offered no proof whatever to controvert that of the appellee. Hence the trial court did not err in assuming, in its instructions which we shall presently discuss, that this road was a public road. From the evidence, it appears that in the late afternoon of the day of the collision the appellee was in the town of Hazard. He there met Dr. Collins, and according to these two gentlemen he asked Dr. Collins to go back with him to Karles to visit a sick child. They left Hazard after dark and drove to Karles. According to these two witnesses, whose story on this point is very unsatisfactory, when they arrived at the home of the sick child, whose name and place of residence they could not remember on the trial, they were informed that a doctor was no longer needed, whereupon they at once started on their return trip to Hazard. They both testified that, before crossing the railroad track at the place where this collision occurred, they stopped the automobile and looked in both directions for a train. Appellee said they stopped some 50 or 70 feet away from the crossing, while Dr. Collins stated that they stopped about 100

yards from the crossing. He evidently used the word "yards" for "feet" by inadvertence, because all the other proof on the point, both that of the appellant, as well as that of the appellee, shows that the Collins automobile did stop about 50 or 60 feet from the crossing. Appellee and Dr. Collins testified that neither the appellee nor Dr. Collins saw or heard any train coming, that thereupon they started on across the crossing, and that just as they got on the crossing a freight train of the appellant, without giving any signal whatever for the crossing, and coming along without any headlight burning on the engine, ran into them.

Appellant's proof is to the effect that both Dr. Collins and the appellee had been drinking rather heavily that afternoon in Hazard; that they went to Karles, not to visit a sick child, but in search of liquor; that they spent quite a little while in Karles at the home of Hester Cockrell, drinking and carousing; that the headlight on the engine of the freight train was burning; and that, had either the appellee or Dr. Collins looked, as they said they looked, when their automobile stopped before going on the crossing, they could have easily seen the approach of the train. The appellant's evidence also established that a signal was given for this crossing, but this evidence also establishes that the statutory signal required by section 786 of the Statutes was not given. The appellant's witnesses who were on the engine at the time of the collision also testified that they saw the car in which appellee was riding standing near the crossing, that they thought the car had stopped to allow the train to pass and that just as soon as they saw the automobile start up again they began signaling with the whistle and bell, and kept such signaling up until after the collision; that, when appellee and Dr. Collins were picked up after the collision, they were in a drunken stupor.

As grounds for reversal, appellant first insists that so much of the pleadings as based a cause of action on the failure of the appellant to erect at this crossing the signal board required by section 786 of the Statutes, and so much of the instructions as submitted to the jury the right to find for the appellee if the appellant failed to maintain such a signal board at this crossing, should have been stricken and omitted. In this the appellant is correct. The only purpose of a signal board is to give the traveler on the highway due notice that he is approaching

a railroad crossing. Appellee admitted, as did Dr. Collins, that they both knew of the presence of this railroad crossing, and indeed stopped their automobile before crossing it, in order to learn of the approach of any train. It is thus obvious that the failure to maintain the signal board had nothing whatever to do with this accident. The case of Louisville & N. R. Co. v. Clark's Adm'rs, 105 Ky. 571, 49 S. W. 323, 20 Ky. Law Rep. 1375, relied upon by the appellee as supporting the averment in the petition and the instruction complained of, is in entire accord with these views, since in that case, while the court did say that a failure to erect and maintain the signboard in question was an act of negligence, yet it also said that, in order for one to recover for such act of negligence, the negligence must have caused the injury. Such is not the case here, as we have seen.

In this connection appellant also complains of the admission of testimony that, after the accident had occurred, the appellant erected a signboard at this crossing. Appellant is hardly in a position to complain of this, because it introduced itself a series of photographs of this crossing, in which this signboard stands out very plainly, so that, if appellee had introduced no evidence whatever on this point, the appellant's testimony brought out exactly what it now says should have been excluded. But, beyond this, the erection of the signboard at this crossing tended to establish that it was a public crossing, since appellant did not undertake to show that its status had changed between the accident and the erection of the board, and since appellant, under the statute, was only required to erect such a board at a public crossing. It would appear, therefore, that the evidence was admissible as an admission, in the absence of explanation, on the part of the appellant that the crossing was a public one.

Appellant next complains that the trial court erred in permitting evidence to be introduced as to the speed of the freight train at the time of the collision, and in instructing the jury that it was the appellant's duty, in operating the freight train at the time and place of the collision, to have it under reasonable control. As this was a country crossing, the appellant is supported in its position by the recent case of Big Sandy & K. R. Co. v. Blair, 224 Ky. 367, 6 S. W. (2d) 453, where this exact

question was discussed, and this exact wording in an instruction was condemned.

The next complaint of appellant is directed to the instruction bearing on the issue of discovered peril and the last clear chance rule. Appellee is in error when he says the evidence supported such an instruction. While it is true the appellant's witnesses, in charge of its engine pulling this freight train, testified that, when they first saw the Ford in which appellee was riding, there was time for them to have stopped the train, so as to have avoided the collision which later took place, yet these witnesses also testified that, after they first saw the Ford, it stopped, and they assumed that it had stopped to let the freight train pass. Appellee admits the Ford did stop first, as appellant's witnesses said it did. Hence the latter were not bound to start stopping the train, at least until the Ford started up again, and there is no evidence that, after this occurred, the train could have, in the exercise of ordinary care, been stopped in time to avoid the collision. See Louisville & N. R. Co. v. Hurst's Adm'r, 220 Ky. 402, 295 S. W. 458. Therefore instruction B should have been omitted, since there was no evidence to support it.

The contributory negligence instruction in this case was the ordinary general contributory negligence instruction. The appellent asked for a more concrete instruction. In view of the appellant's defense in this case, and the confusion which naturally arises in the layman's mind when it is called upon to distinguish abstractly between imputed negligence and contributory negligence, we are of the opinion that the court should have instructed concretely on this issue. On the next trial, the court will instruct in accordance with the principles laid down in Graham's Adm'r v. I. C. R. R. Co., 185 Ky. 370, 215 S. W. 60.

In the instruction on the measure of damages, the court will, on the next trial, reform it so that the jury will be told that any allowance for permanent impairment of appellee's power to earn money shall begin when any allowance they may make for loss of time ends. Louisville & N. R. Co. v. Parsons, 213 Ky. 432, 281 S. W. 519.

For the reasons herein stated, the judgment is reversed, with directions to grant the appellant a new trial in conformity herewith.