# The Lack Malleable Iron Company v. Graham.

### (Decided February 27, 1912.)

## Appeal from McCracken Circuit Court.

1. Master and Servant—Negligence—Withdrawing Case From Jury. —The rule is well settled that it is only where from the plaintiff's evidence it cannot be determined whether the injury resulted from some negligence of the employer or other cause, and that the probability in the one case is equally as strong as in the other, that the court is warranted in withdrawing the case from the jury.

2. Instructions.—While the instructions should have told the jury that no recovery could be had unless the plaintiff relied upon the promise to supply him a new match board, the jury was not mislead by the failure of the court to incorporate this idea in the instruction.

3. Evidence—Physician's Bill.—It is competent, when a physician has testified as to the character, nature and extent of an injury, to ask him the amount of his bill and whether or not it has been paid, for the purpose of showing bias and affecting his credibility upon this point.

WHEELER & HUGHES for appellant.

HENDRICK & CRICE and FRANK BURNS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On the second of September, 1910, while engaged as a molder in the plant of the Lack Malleable Iron Company, in the city of Paducah, John Graham had his left foot and the toes thereof seriously burned and injured by coming in contact with molten iron. Conceiving that his injury was due to negligence on the part of his employers in not furnishing him reasonably safe machinery with which to do the work assigned him, he instituted a suit for damages. The company denied liability, and pleaded that the injury was the result of the plaintiff's own negligence. Upon a trial before a jury the plaintiff recovered a verdict for $2,500.

The defendant appeals and seeks a reversal upon four grounds: First, that the verdict is flagrantly against the evidence and is grossly excessive; second, that there is no substantial evidence showing that the injury is permanent; third, that, as the evidence for plaintiff shows that the injury may have resulted from one of several causes, only one of which was, under plaintiff's

evidence, the result of defendant's alleged negligence, the court should have instructed the jury to find for the defendant; and fourth, that the instructions as given were erroneous and highly prejudicial.

The particular act of negligence relied upon in the petition is that the defendant furnished to the plaintiff a defective "match board," and that as a result the molds for a clevice made from said match board were defective. While plaintiff was pouring the molten iron into one of said molds, it burst, and the molten iron ran therefrom onto his foot, between the great toe and the second toe, and burned him, to his damage in the amount sued for.

The negligence relied upon by the defendant to defeat plaintiff's recovery is, that when he discovered that the mold was bursting and the molten iron running therefrom, he attempted to push or shove loose sand into the crevice with his foot, and in this way brought his foot in contact with the molten iron, and that, but for such act on his part, he would not have been injured.

A description of the character of work in which he was engaged and the tools and machinery with which he was required to work is taken from appellant's brief. A match board is a preparation of sand and some kind of oil. It is laid in a thin wooden box, the rim around the box being called a flask. The sand and oil gradually harden. While it is soft or in a pliable condition a brass tool is laid in the soft sand exactly one-half the thickness of the tool to be manufactured. When the casting of the brass tool is to be produced wet sand is spread over the match board, which results in leaving in the sand the half of the impression of the tool to be produced. The same process is repeated and the two halves of the tool impression in the sand being placed one above the other makes the "mold." Molten iron poured through a hole in this square mold of sand results in filling the tool impression and ultimately produces the desired shaped tool. It is the duty of the molder to make his own molds from a match board furnished him by the pattern maker of the factory. He selects and wets his own sand and pours his own molds. His helper is called a shifter. The molder makes a great number of molds and places them in parallel lines through the portion of the factory devoted to molding. Each aggregation of molds is called a "floor," and when the furnace runs the molder takes the molten iron in a ladle having a handle

about three and a half or four feet long and pours along the parallel lines of molds. The shifter, after the molder has poured three molds, pulls them out of the way so that he may with more convenience proceed to the next batch of molds.

On the day of the injury, after a floor of molds had been laid, and while appellee was in the act of filling them, the mold nearest his left foot burst and the molten iron ran upon and into his shoe and severely burned his foot, and particularly the toes thereof. There can be no question from the evidence but what he was severely injured, and it is not contended for appellant that the proof did not warrant the submission of the case to the jury, unless because the evidence shows that the bursting of this mold may have been due to any one of several causes, the court should have instructed the jury to find for the defendant, on the ground that it was not definitely shown that the bursting was due to any negligence on the part of the defendant.

There would be some plausibility in this contention if the evidence did not show that plaintiff had made complaint to his employers that this match board with which he was required to work was defective in its construction, and that the defects therein were causing his molds to burst; that, relying upon the promise of his employer to remedy the defect or supply him with a new match board, he continued to work, and, while thus continuing, the injury occurred. Under this state of facts the court would not have been authorized in taking the case from the jury. The rule is well settled that it is only where from plaintiff's evidence it can not be determined whether the injury resulted from some negligence of the employer or other cause, and that the probability in the one case is equally as strong as in the other, that the court is warranted in withdrawing the case from the jury. Here the evidence for plaintiff clearly showed that the injury resulted from the failure of the defendant to furnish him with a match-board reasonably free from defects. It is true, the evidence brought out by the defendant would leave this matter somewhat in doubt. But this may be said of most every case where there is a contest over the question of negligence or no negligence on the part of the employer. By his evidence the plaintiff must make out a case, and although the evidence offered for the defendant may tend to show that the injury was not the result of any negligence on the part of the

employer, but due to other cause, the case must nevertheless be submitted to the jury. It is only in cases where, from plaintiff's evidence alone, it can not be determined whether the injury is the result of the negligence of the defendant or other cause, that the court is warranted in taking the case from the jury. Thompson on Negligence, p. 364; Hughes v. Railroad Co., 91 Ky., 526; Louisville Gas Co. v. Kauffman, Straus & Co., 105 Ky., 131; and Wintuska's Admr. v. Railroad Co., 14 Rep., 579.

Since plaintiff made out such a case as warranted its submission to the jury, the next question presented for consideration is, did the instructions given by the court properly present the law, as warranted by the pleadings and the evidence? There is no objection to the instructions as a whole. But complaint is made of instruction No. 1, in that the court erred in not telling the jury that, although plaintiff may have told the defendant's foreman that the match board with which he was required to work was unsafe and defective, and that if he continued to work with said match board at the direction of the foreman, under the promise that he would furnish him a new one, and that plaintiff had a right to rely on said promise and continue to work for a reasonable time and until the defendant could reasonably furnish him a new match board, still he could not recover unless he relied on such promise.

Technically, this point is well taken, but evidence for plaintiff upon this point showed that on as many as three days just preceding the date of the injury he made complaint to the manager in charge of the business that the match board was defective and requested another one, and that said manager told him to go ahead and that he would see about it, or get him one. There is other evidence, produced by plaintiff, tending to corroborate him in this particular, and, while the instructions should have told the jury that no recovery could be had unless he relied upon the promise to supply him a new match board, we are of opinion that the jury was not misled by the failure of the court to incorporate this idea in the instruction. The evidence showed, and he so testified, that he did rely upon such promise; and there was no testimony to the contrary upon this point. And while it was error upon the part of the court to fail to incorporate this idea in the instruction, it was not prejudicial under the facts of the case. A judgment will not

be reversed for technical errors which do not affect the real merits of the controversy.

The further complaint is made of said instruction that in the latter part thereof the court in effect told the jury that the match board was defective. This criticism has no merit, for the instruction must be read as a whole, and, when so read, it plainly left for the determination of the jury this question as to whether or not the match board was defective. Any defect in instruction No. 1 along the line complained of by appellant in this particular is fully covered and cured by instruction "A," which was evidently given by the court upon appellant's motion. The issue was not a complicated one, and there can be no question but what the jury thoroughly understood it. The instructions as a whole are not objectionable, but fairly presented for the consideration of the jury the questions at issue.

The only remaining ground urged by counsel in brief for reversal is that the verdict is excessive. As stated, appellee was severely burned. The injury took him from his work somewhere between six and ten weeks, the evidence upon this point being very conflicting. He was, during that time, under the care of three physicians, one of whom, Dr. Pendley, did not examine him until some time after the injury occurred, and he testified that, in his judgment, it is permanent, and that he will never have the same use of that foot that he theretofore had. The toe next to the great toe will have to be amputated. It was burned in to the bone, and in his judgment the injury to this foot is permanent.

It is insisted that this testimony must be disregarded because it is shown that the physician looked to a recovery in this case for his fee. With this line of reasoning we can not agree. In the first place, it would be a serious and unwarranted reflection upon the integrity of a physician to say as a matter of law that his testimony was warped or influenced by the fact that, unless a recovery was had, he would not be paid for his services in examining or treating the patient. In the second place, if such a rule obtained, it would have a tendency to deprive those in need of the services of skilled physicians of such services, or at least put them to the necessity of paying for such services as had been rendered before the physician could testify. It is competent, when a physician has testified as to the character, nature and extent of an injury, to ask him the amount of his bill and

whether or not it has been paid, for the purpose of showing bias and affecting his credibility upon this point. But when a jury, with these facts before them, has returned a verdict in favor of plaintiff, evidently based, at least in part upon the opinion of such physician, the court would not be warranted in disregarding that evidence and setting aside the verdict.

It is common knowledge that a burn is one of the most painful of injuries. In this case it was severe and the suffering, according to the evidence, on account of it was for some time intense. Just what part of the sum awarded plaintiff in this case was for pain and suffering and what part for the permanent impairment of his power to earn money can not, of course, be told. But if the injury is permanent and he is disabled in his left foot because of said injury, we would not feel warranted in saying that the damages awarded are excessive. There being some evidence tending to show that the injury is permanent, no ground is presented for disturbing the verdict.

Judgment affirmed.