## Stony Fork Coal Co. v. Lingar

(Decided February 6, 1913.)

### Appeal from Bell Circuit Court.

1. Master and Servant—Reciprocal Duties of Generally.—It is the duty of the master to exercise ordinary care to furnish the servant a reasonably safe place in which to work, and it is the duty of the servant to exercise ordinary care to avoid injury to himself.

2. Damages—$2,500 Not Excessive.—Where the evidence showed that the leg of the injured and complaining party was broken and his ankle dislocated, leaving him after the fracture was cured with a crooked, deformed leg, $2,500 as compensatory damages was not excessive.

SAMPSON & SAMPSON, for appellant.

FRANK BAKER, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, while working in the mine of the appellant, received injuries caused, as he alleged, by its failure to furnish him a reasonably safe place in which to work. In this action to recover damages for the injuries the jury fixed his compensation at $2,500. The appellant insists that the judgment entered on this verdict should be set aside upon either of several grounds pointed out by its counsel.

The facts surrounding the accident that resulted in the injury are substantially these: The appellant had a single track in its mine for a distance of several hundred feet, and then for a distance of about 300 feet there was a double track, the two tracks being about ten feet apart. When a train of empty cars from the mouth of the mine were drawn in to a point on one of the double tracks it was customary to have standing on the other double track a train of loaded cars, and the men who brought in the empty cars would take out the loaded ones.

The cars were taken in and out of the mine by means of a cable rope about an inch in diameter, operated by an engine situated at the mouth of the mine, the rope at the other end of the track working around a large drum. The two men who attended to the running of the cars were called "rope drivers," and when these rope drivers brought in a train of empty cars hauled by the cable which was attached to each end of the train, they would stop the cars on the track opposite the loaded

cars and then transfer the cable from the empty train to the loaded train, fastening it at the front and the rear ends of the train. In transferring the cable from the empty train to the loaded train it was necessary to pull or carry it across the space between the two tracks, and when this was being done, and in fact at any time when the cars were standing, the cable would be slack and lying in the center of the track, but when the cars were being moved the cable would be taut and above the track.

On the occasion when appellee was injured he and the other rope driver had brought in an empty train and stopped it at the usual place on the double track. When this was done appellee stepped into an adjacent entry, and while he was there engaged the other rope driver transferred the cable from the empty to the loaded cars, performing not only his usual duty but also the duty of appellee. A moment before appellee returned to where the cars were standing the boss driver ordered the other rope driver to start the loaded train out, and in obedience to this direction the driver signalled, by means of a wire, the engineer at the mouth of the mine to start the train. As the train started and the cable began to tighten the other rope driver discovered that the cable was caught or hung on something, and so notified appellee, who was then present, and he, upon receiving this information, started to the place where he could signal the engineer to stop the train until the cable could be freed. As he was going to the place where he could give the signal to the engineer, the cable which had caught on the end of a tie came loose of its own accord and struck him on the leg, dislocating his ankle and breaking his leg.

The negligence upon which appellee rests his case consists in the alleged fact that appellant failed to discharge its duty in furnishing him a reasonably safe place in which to work by permitting the tie on which the cable hung to be and remain in such condition as to catch the cable.

The evidence in behalf of appellee conduced to show that the cable, while it was slack, caught under the end of a tie in the track, and this caused the other driver to notify appellee, after the train had started, that the cable was caught. But in some unexplained way the cable freed itself from the tie on which it caught before

appellee had an opportunity to assist in taking it loose and struck appellee as before stated.

The evidence for appellee further shows that the rails of the two tracks at the point where the accident occurred were laid on ties in the usual manner, but that one tie was so laid as to be under one rail of each track, the ends of this tie being in the center of each track, and that on the end of this tie in the center of this track, the cable caught. It was also shown in his behalf that the ends of this tie could have been cut down or sloped down so that the cable would not catch on it when it was slack and lying between the rails in the center of the track, and when the rope was caught or for any reason not in a position to work in a satisfactory manner, it was the duty of the rope drivers to correct, if they could, the trouble.

The evidence on behalf of the appellant in regard to the condition of the track was to the effect that the ties and track at the point in controversy were in a safe condition and that the end of the tie which it is claimed the rope was caught by, had been hewed down so that the rope could not hang in it.

Counsel for appellant strongly insist that appellee at the time he received the injury complained of was outside the line of his employment and not in the performance of any duty he owed to the company, and so not entitled to recover although the injuries were due to its failure to keep the place where he was at the time in a reasonably safe condition. In support of this proposition we are cited to a number of pertinent cases holding that when a servant goes outside the scope of his employment on business or pleasure of his own the master does not owe him the duty of providing a reasonably safe place, and hence he cannot recover for any injury received.

The facts of this case, however, do not justify the application of the rule relied on. Appellee, a short while before he was injured, went into an adjoining entry to attend to a private and necessary duty and on his return he found the train starting and was notified by the other rope driver that the rope was hung, and when he was making an effort to stop the train he received the injuries. It was the duty of the rope drivers to look after the rope and the equipment of the train and to remedy any trouble that might come up in connec-

tion with the operation of the train, and so when appellee undertook to have the train stopped he was acting strictly within the line of his employment and was doing what his duty required him to do.

It is further contended by counsel that the injury to appellee was the result of his own negligence, but we find ourselves unable to agree that appellee was guilty of any negligence or doing anything at the time he was injured that his duties did not require him to do. We have carefully read the record, and the only suggestions of negligence on the part of appellee that we have been able to find consist in the fact that he temporarily left his place of duty and went into an adjacent entry for the purpose before stated, and on his return stepped over and across the rope on his way to signal the engineer, but we do not think these acts warrant the inference of negligence on the part of appellee.

The complaint is further made that the court erred in giving to the jury instruction No. 3, and in refusing several instructions offered by appellant. In instruction No. 3 the jury were told that if they believed from the evidence that defendant, after it discovered the danger to the plaintiff could not have prevented the injury they should find for the defendant, unless they believed he left his post of duty and went into the entry with the knowledge and consent of his superior, Stidam.

This instruction really had no place in the case, as there was no evidence that any superior officer could have prevented the injury after the danger to appellee was discovered. In fact no person realized that he was in a place of danger until he was injured, nor did any person have opportunity to warn him of any danger attending his movements. But we are unable to perceive in what manner it could have prejudiced the rights of appellant.

The instructions offered and refused advised the jury that if they believed Lingar was not in the performance of his duty when he was injured, they should find for the company, unless they believed his peril was discovered in time to prevent the injury to him, and further, that it was his duty to exercise care to protect himself from danger, and that if he received the injury complained of because of his temporary absence in the entry, they should find for the company. These instruc-

tions were properly refused because not applicable to the facts.

Really the only question in the case was whether or not appellant failed in its duty to exercise ordinary care to furnish appellee a reasonably safe place in which to work when it left the tie in a condition to catch the cable. If it did not, appellee was entitled to recover. If it did, there should have been a verdict against him. This issue was fairly submitted to the jury in an instruction telling them that it was the duty of appellant "to exercise ordinary care to provide the plaintiff with a reasonably safe place in which to work, considering the nature of the employment, and if you believe from the evidence that the defendant failed to use ordinary care to put and keep its tracks in a reasonably safe condition, and that by reason of such failure the wire rope mentioned in the evidence caught on the end of a cross tie, and was thereby caused to strike and injure the plaintiff, you will find for him."

This instruction, in connection with the other one telling the jury that it was the duty of appellee "to exercise ordinary care to protect himself from the dangers ordinarily incident to such employment, and if you believe from the evidence th. plaintiff knew, or by, the exercise of ordinary care could have known, that the wire rope was in a dangerous position on the track, and that while possessing such knowledge or means of knowledge, passed over and across said track and rope and was thereby injured, the law is for the defendant, and you will so find," submitted to them the only issue in the case on this point. These instructions, which contained a correct statement of the law, left it to the jury to say whether the appellant exercised ordinary care to furnish appellee a reasonably safe place in which to work, and whether he exercised ordinary care to protect himself from danger.

The evidence, as to whether or not appellant performed the duty imposed upon it, is conflicting, and, if the jury had returned a verdict for appellant, we could not have said it was flagrantly against the evidence; neither can we say that the verdict in favor of appellee is flagrantly against the evidence. In other words, the question of fact was a close one, and it was, as we have often said, peculiarly the province of the jury to decide it.

A further ground urged for reversal is that the verdict is excessive. The evidence shows that appellee's leg was broken and his ankle dislocated, the condition of the leg being such that immediately after the injury his foot could be lifted up by the side of his leg. It is further shown that, although the fracture healed, it left appellee with a permanently crooked, deformed leg, with a knot in it. It is true that he was only disabled from labor for about two months, during which time he walked on a crutch, but the permanent and serious injury to his leg in connection with the pain and suffering that he naturally and reasonably endured, was sufficient to sustain compensatory damages in the sum allowed.

The judgment is affirmed.