## C. N. O. & T. P. Ry. Co., etc., v. Spears.

(Decided February 12, 1913.)

### Appeal from Lincoln Circuit Court.

1. Railroads—Crossing—Personal Injuries—Action for Damages—Contributory Negligence.—In an action for damages for personal injuries, evidence considered and held that the question of contributory negligence was for the jury.

2. Railroads—Crossing—Personal Injuries—Action for Damages—Instructions.—Where in an action for personal injuries at a crossing the court told the jury that if the crossing was especially dangerous it was incumbent upon plaintiff to exercise increased care, commensurate with the danger, the instruction was not erroneous in that the jury were not told that if the danger of going over the crossing that day was more than ordinarily increased, greater care was required of the plaintiff; for in determining whether or not plaintiff exercised proper care for her own safety, the jury had the right to take into consideration the circumstances and conditions surrounding plaintiff.

3. Railroads—Crossing—Personal Injuries—Action for Damages—Instructions.—Where in an action for damages for personal injuries at a crossing, the instructions imposed upon the railroad the duty of giving reasonable warning signals of the approach of the train, the instruction was not erroneous in failing to fix the place at which the signals should be given.

4. Railroads—Crossing—Personal Injuries—Action for Damages—Instructions—Measure of Damages.—An instruction on the measure of damages allowing a recovery for physical pain and suffering caused by "plaintiff's miscarriage and premature birth of said son," is not misleading on the ground that it separates one injury into two elements of damage and authorizes a recovery for both, since every man of common sense knows that a miscarriage and the premature birth of a son are practically one and the same.

5. Railroads—Crossing—Personal Injuries—Action for Damages—Misconduct of Counsel.—In an action for damages for personal injury, misconduct of counsel examined and held not to be prejudicial error.

6. Railroads—Crossing—Personal Injuries—Action for Damages—Verdict—Excessive.—In an action for damages for personal injury, evidence considered and a verdict of $3,000 held not excessive.

JOHN GALVIN, J. W. ALCORN and K. S. ALCORN, for appellants.

EMMET PURYEAR, ROBERT HARDING and JOHN W. RAWLINGS, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages by plaintiff, Lucy Spears, against defendants, Cincinnati, New Orleans and Texas Pacific Railway Company and Samuel McCormack, plaintiff obtained a judgment for $3,000. The defendants appeal.

Briefly stated, the facts are as follows:

For about four years plaintiff had resided on a farm situated in Lincoln County, Kentucky, about one and one-half miles east of Hustonville. The house was located on a high and steep hill. The passway to the house from the public road to Hustonville is entered through a gate at that road, and about a hundred yards from the gate it is crossed by the railroad. The railroad runs north and south, and the passway from west to east. After crossing the railroad the passway leads up to plaintiff's house. At the crossing there is a steep hill. In going from the gate at the public road towards the crossing the passway goes up the hill. On the right hand or south side of the passway the view of the railroad towards the south is obstructed. When the crossing is reached, the view is still obstructed to a certain extent by a bank or cut about four feet high. The railroad company maintains a switching post three or four hundred yards south of the crossing. According to the evidence for plaintiff, the trains were accustomed to whistle for the crossing, and people passing over the crossing were accustomed to rely on the whistle. One witness said about ninety per cent of the trains running north whistled for the crossing. On the day of the accident Mrs. Spears was returning from Hustonville. She was riding in a buckboard. At the crossing the railroad is fenced, but there is a gate on each side of the crossing.

The west gate was open; the other gate was closed. Plaintiff says as she drove up to the railroad she stopped and listened. The wind was blowing strong from the north. Not hearing any whistle or bell, and being unable to see any smoke, she drove on through the gate up to the track. Upon looking south, the train was right on her. Her horse became frightened, reared and swerved to one side. In order to protect herself she attempted to jump and fell out and struck her side. The right hand rear wheel of the buggy came off. She was unable to say, whether it was struck by the train or was torn off by the sudden turning of the horse. She fell on her side and suffered injuries which will de discussed later.

William Frederick, who worked on plaintiff's farm, says that he saw the train from the time it left McKinney, about three and three-quarters miles south, until it passed the crossing where Mrs. Spears was injured. The train consisted of ten coaches, and was running about 40 miles an hour. He saw smoke from the train all the way. The train did not whistle or ring the bell. Defendant's engineer, fireman and traveling fireman, who was on the engine at the time, say that the bell was ringing automatically, and that the engine whistled at the whistling post.

It is earnestly insisted that as the wind was blowing from the north, and plaintiff's view towards the south was obstructed, she was guilty of contributory negligence in going up to the track without exercising care commensurate with the danger to ascertain the approach of the train. In such a case, however, where the view of the traveler is obstructed, the traveler has a right to rely on the railroad's performing its duty and giving reasonable signals of the approach of the train. Where the traveler stops and listens, and hears no signals or noise from the train, it cannot be said as a matter of law that she is guilty of contributory negligence in proceeding towards the track without first seeing that the train was not coming. Under such circumstances the question of contributory negligence is for the jury. In this case the court told the jury that it was the duty of the plaintiff in approaching such crossing to use such care as might be reasonably expected of an ordinarily prudent person to learn of the approach of the train and keep out of its way, and if the crossing was especially dangerous it was incumbent upon her to exercise increased care commensurate with the danger, and if she failed

to exercise such care, and but for this she would not have been injured, then the law was for the defendants, and the jury should so find, although they might believe from the evidence that no signals were given of the approach of the train to said crossing. No complaint is made of this instruction as far as it goes, but it is insisted that the court should have told the jury that if the danger of going over the crossing was that day more than ordinarily increased, greater care was required of plaintiff. The court, however, defined ordinary care as that degree of care which ordinarily prudent persons exercise under like circumstances and similar conditions as those which surrounded the plaintiff at the time she was in the act of crossing the track. The jury, therefore, had the right to consider the circumstances and conditions surrounding the plaintiff, and one of these circumstances and conditions was the fact that a strong wind was blowing from the north. It was not necessary, therefore, in the instructions to particularize the dangers incident to the crossing on that particular day. It was for the jury to say whether, under all the circumstances and conditions, plaintiff exercised proper care for her own safety.

Instruction No. 1 is criticized because the question whether or not plaintiff jumped from the buggy was submitted to the jury, when plaintiff says that she fell from the buggy. An examination of her testimony shows that in attempting to jump she fell. It is immaterial, however, whether she fell or jumped. If by reason of the negligence of the defendants the horse reared and plunged and thereby caused plaintiff to fall out, or if, acting in the emergency, she, in the exercise of ordinary care, attempted to jump from the buggy in order to protect herself from injury, the result is the same. In either event, she is entitled to recover. Nor is instruction No. 1 subject to criticism because it failed to fix a point at which signals should have been blown or given. In requiring reasonable signals to be given of the approach of the train, it was sufficient.

Complaint is made of the instruction on the measure of damages, because it allowed the jury to compensate the plaintiff for any physical pain and suffering caused her by the "miscarriage and premature birth of said child." It is argued that the words "miscarriage" and "premature birth of said child" are synonymous, and that the untrained mind might construe them as being

separate elements of damage. While it would have been better to omit the words "premature birth of said child," we are not disposed to hold the instruction misleading, for every man of common sense knows that a miscarriage and the premature birth of a child are substantially the same thing.

It is further insisted that plaintiff's attorney was guilty of improper conduct in his argument to the jury. It appears that a man by the name of Radcliffe, who was a traveling fireman, was on the engine at the time of the injury. At that time a strike was going on. The traveling fireman was instructing the fireman employed on the engine. The traveling fireman remained with the company only ten days. Plaintiff's attorney said:

"This man Radcliffe (a witness for the defendant) admits that he had been in the service of the company only about a week. How it happened that he was in the service he did not explain, or how it happened that he remained so short a time in the service of the company he did not explain. Haven't you the right to infer from these facts that he was a 'strike breaker' and indifferent as to how he discharged his duties?"

Counsel for defendant objected to the above statement, whereupon the court said: "Gentlemen, you will consider the testimony and the facts as shown by the testimony." While it is not proper for counsel to refer to the witness as a strike breaker, and while it may be that the court's admonition to the jury did not go far enough, we cannot say, under the circumstances of this case, that the remark of counsel was prejudicial to the substantial rights of the defendants.

Lastly it is insisted that the verdict is excessive. At the time of her injury plaintiff was 28 years of age. Prior to her injury she was strong and robust and perfectly well. Immediately after her injury she was compelled to go to bed. She suffered intense pains in her body, and on the seventh day had a miscarriage. It was about four weeks after the miscarriage before she was able to sit up. Ever since her injury she has been in bad health. She has nervous spells lasting several hours at a time, and suffers greatly with pain at the base of her brain. Her eyesight is also affected. Her physician says that the miscarriage was the direct result of her injury. When he attended her she was very nervous, and suffering a good deal from pain and loss of blood. He gives it as

his opinion that her injury is permanent, and that she will never be a well woman. Under these circumstances, we cannot say that the verdict is excessive.

Judgment affirmed.