# Hoagland v. Dolan.

(Decided April 26, 1935.)

**2**

GEORGE R. SMITH for appellant.

S. B. TRIPLETT for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On October 23, 1933, the appellant, John A. Hoagland, in company with his wife, was driving his car in Scott county, Ky., over United States highway No. 25, en route from his home in Celina, Ohio, to Florida. At the same time, the appellee, Mrs. Jane Dolan (plaintiff below), was traveling with other guests in the car of her husband, William A. Dolan, which he was driving from their home in Mt. Washington, Ohio, in the same direction and over the same highway, en route to Manchester, Ky. When a short distance from Georgetown, the county seat of Scott county, a collision is alleged to have occurred between the appellant Hoagland's car and that which Mr. Dolan was driving, in which plaintiff was at the time an occupant. By reason of this collision, alleged to have been caused by Hoagland's negligent operation of his car, Mrs. Dolan claims to have been seriously and permanently injured. Both the appellee, Mrs. Dolan, and the appellant, Mr. Hoagland (hereinafter referred to as plaintiff and defendant, respectively), were at the time of this accident nonresidents of the state of Kentucky and residents of the state of Ohio.

To recover compensation for the personal injuries alleged to have been thus caused Mrs. Dolan by the collision, she brought this action, as a nonresident plaintiff, in the Scott circuit court for $25,000 against the nonresident defendant, Hoagland, under chapter 80, Acts 1930 (now sections 12-1 to 12-6, Carroll's Kentucky Statutes, 1933 Supplement), providing for sub-

stituted service of process upon nonresident defendants in civil suits arising out of the negligent operation of motor vehicles by nonresidents upon the highways of the commonwealth.

Notice of the suit and substituted service of process, with attested copy of the petition, were made upon the secretary of state, and other steps taken in full compliance with the provisions of the statute.

Special demurrer was filed, by which the defendant challenged the jurisdiction of the court in extending the benefit .of the statute, providing for substituted service of process, to a·nonresident plaintiff, especially where a resident of the same state as the nonresident defendant, upon the ground that in such instance the court of their own state was the proper tribunal for the .determination of such personal injury claims.

The special demurrer being overruled, he filed a general demurrer to the petition, upon which a like ruling was made, whereupon, without waiving his exceptions to the court's adverse rulings upon his demurrers he filed an answer, wherein he traversed the averments of the petition, pleaded contributory negligence, and, further, pleaded that to hold the substituted service of process made upon him, under the circumstances stated, to be effective was in violation of his constitutional rights as offending the Federal Constitution, art. 4, sec. 2, and the Fourteenth Amendment thereto.

To this plea of the answer a demurrer was offered and sustained; also, a reply was filed, denying the answer's plea of contributory negligence.

The issues being thus joined upon the pleadings and proof heard in their support, upon submission of the cause, the jury, under the instructions of the court, returned a verdict in favor of the plaintiff for $3,100. Defendant's motion to set aside the verdict and for a new trial having been overruled, judgment was accordingly entered.

The defendant, challenging the propriety of this judgment, appeals and earnestly argues for its reversal: (1) That the trial court erred in permitting, over defendant's objection, a prejudicial voir dire examination of the jury; (2) that the verdict ·is flagrantly against

**4**

the law and facts, and that the damages awarded were excessive; and (3) that the court erred in construing the provisions of sections 12-1 to 12-6 of the Statutes, providing for a substituted service of process upon nonresident motorists, 'as authorizing the bringing of actions thereunder in the state where both plaintiff and defendant are nonresidents of the state.

Addressing ourselves to these contentions thus presented, we will first consider that attacking the propriety of the trial court's ruling in permitting, over his objection, the plaintiff's alleged prejudicial voir dire examination of the jury. This objection is based upon the court's having permitted the plaintiff to ask upon his voir dire examination of the prospective jurors the following question: "Are any of you gentlemen at the present time employed by or interested in any insurance company whose business it is to insure automobiles against personal injury of the owner?"

The defendant at the time objected to the question, and moved that the jury be discharged and the case continued.

He contends that the question was flagrantly prejudicial to his rights, in that it was asked by plaintiff's counsel, not in good faith to ascertain any suspected bias of the jury, but to improperly get before it the information that the appellant was insured, and that such damages as it might allow plaintiff would be paid by some insurance company.

The question thus raised by this objection has been frequently before us for consideration, and wherein there has been clearly established the rule governing the proper or improper use of such character of interrogation upon the jury's voir dire examination. The court, in discussing this question in the early case of Dow Wire Works Co. v. Morgan, 96 S. W. 530, 533, 29 Ky. Law Rep. 854, said:

"If in the trial of a case counsel believes or has information that a juror is directly or indirectly interested in the result of a trial, he has a right to question the juror touching his interest. Neither the Civil Code nor statute defines what constitutes actual or implied bias on the part of jurors, or prescribes the inquiries that may be made to as-

certain the juror's bias or interest; but it is well settled that the parties litigant have the right to a trial by a thoroughly impartial and disinterested jury, and consequently the privilege of making such inquiries as may be necessary to elucidate this fact.''

However, the suggested limitation made in the opinion, that such character of interrogation should only be allowed counsel where employed in good faith in the belief that such bias might exist as to some of the jurors, was further emphasized, as one of controlling materiality, in the asking of such questions, in the later case of W. G. Duncan Coal Co. v. Thompson's Adm'r, 157 Ky. 304, 162 S. W. 1139, 1140, where the court said:

"We have recognized the propriety of such a question where counsel for plaintiff has information that the defendant has indemnity insurance, and that some member of the jury is interested in the insurance company, and the question is asked in good faith. Dow Wire Works Co. v. Morgan, 96 S. W. 530 [29 Ky. Law Rep. 854]; Owensboro Wagon Co. v. Boling, 107 S. W. 264 [32 Ky. Law Rep. 816]. This privilege, however, is not only liable to abuse, but is frequently abused. * * * In view of the constant abuse of the privilege in question, we conclude that the question should never be asked unless asked in good faith, and the good faith of plaintiff's counsel will depend on whether or not he has reasonable grounds to believe that defendant carries indemnity insurance, and that one or more of the jurors are in some way interested in the insurance.''

Whether or not such question, in the particular instance, was properly asked in good faith rests largely in the discretion of the trial court, and we are not prepared to say that the trial court's ruling, in permitting the question to be asked, was not made with timely observance of the rule that it should only be asked in good faith for the ascertainment of the jury's suspected bias, where supported by reasonable grounds therefor, or, as said in the Dow Case supra, "although the pertinency or relevancy of this inquiry does not appear in the record, we are not prepared to say that

counsel, in making the inquiry, did not have some knowledge or information to justify them in the belief that an accident insurance company was interested in the result of the trial.'' See, as in accord with and in support of such rule, the following: 35 C. J., sec. 439, page 394; 16 R. C. L. sec. 93, pages 276 and 277; Owensboro Wagon Co. v. Boling, 107 S. W. 264, 32 Ky. Law Rep. 816; Jessup, Adm'x, v. Davis, 115 Neb. 1, 211 N. W. 190, 56 A. L. R. 1403, and annotations thereto, clause 3, pages 1439 to 1448; Stehouwer Adm'r, v. Lewis, 249 Mich. 76, 227 N. W. 759, 74 A. L. R. 844, and annotations therto, clause 4, pages 860 to 866; Netter v. Caldwell, 173 Ky. 200, 190 S. W. 721; Danville Light, Power & Traction Co. v. Baldwin, 178 Ky. 184, 198 S. W. 713; Coral Ridge Clay Products Co. v. Collins, 181 Ky. 818, 205 S. W. 958; Egner v. Curtis, Towle & Paine Co., 96 Neb. 18, 146 N. W. 1032, L. R. A. 1915A, 153; Trevillian v. Boswell, 241 Ky. 237, 43 S. W. (2d) 715.

For a due consideration and dispositon of the next contention, that the verdict is flagrantly against the law and facts and that it is excessive, a brief summary of the evidence is called for.

The facts as disclosed by the record are that upon the occasion in evidence, when both the defendant, Hoagland, and Dolan (in whose car the plaintiff was at the time traveling) were driving southwardly on Dixie Highway No. 25 in Scott county, Dolan, upon overtaking Hoagland's car, after duly signaling his desire to get by, attempted to pass him, when, according to the testimony of plaintiff and that of her three eye-witnesses corroborating her, as he was passing Hoagland negligently turned and swerved his car to his left, across the highway, into collision with that of Dolan, crowding it off the road and down into a ditch, by reason of which plaintiff was violently thrown against the side of the car, resulting in her serious and permanent injury. Also they testify that the defendant, after thus colliding with Dolan's car, speeded away, without stopping to render assistance.

The defendant's testimony is directly contradictory of such claim, in that he denies that he, when Dolan was attempting to pass, turned his car from the right side of the road, or that his car swerved or in

anywise struck or collided with that in which plaintiff was riding. He testifies that Dolan, while trying to pass him, himself negligently ran his car off the road and into the ditch.

Also, the testimony of the plaintiff is that the injuries alleged inflicted upon her by reason of defendant's negligent operation of his car are of a serious and permanent character; that in the accident alleged thus caused, her ankle was fractured, the ligaments torn, her knee badly lacerated, and her head wounded. Her expert witnesses testify that by reason of such injuries she will probably be permanently lame. Further, she testifies that by reason of her injuries received in the accident she had been caused to constantly suffer great pain, from which she still at the time of the trial was suffering, and had been required, because of her crippled condition, to employ help to perform her household work.

Further it was testified by and for plaintiff that she had and would incur some $600 expense for the past and continued necessary treatment of her injuries.

On the other hand, the evidence given by the defendant and his expert witnesses brought into sharp issue the seriousness and permanent character of plaintiff's injuries.

Clearly, this conflicting testimony as to the cause, nature, and extent of the injury, as well as what, if any, amount of damages should be allowed in compensation therefor, were peculiarly the problems presented by the evidence and the court's instructions thereon to the jury for its own determination. It having found upon this evidence a verdict for plaintiff for $3,100, we are not inclined to disturb its finding as excessive, or as one out of harmony with the like or larger amounts awarded and approved for similar injuries in the cases of Ashland Sanitary Milk Co. v. Messersmith's Adm'r, 236 Ky. 91, 32 S. W. (2d) 727; Cincinnati, N. O. & T. P. Ry. Co. v. Spears, 152 Ky. 200, 153 S. W. 236; Bowling Green Stone Co. v. Capshaw, 64 S. W. 507, 23 Ky. Law Rep. 945; City of Louisville v. Adams, 100 S. W. 218, 30 Ky. Law Rep. 1129; City of Louisville v. Arrowsmith, 145 Ky. 498, 140 S. W. 1022; Lack Malleable Iron Co. v. Graham, 147 Ky. 161, 143 S. W. 1016; Stony Fork Coal Co. v. Lingar, 152 Ky. 87, 153 S. W. 6; **L.**

& N. R. Co. v. Brewer, 147 Ky. 166, 143 S. W. 1014, 39 L. R. A. (N. S.) 647, Ann. Cas. 1913D, 151; L. & N. R. Co. v. Gayle, 204 Ky. 142, 263 S. W. 763.

We therefore conclude that this objection urged and argued by appellant is without merit and is not to be sustained.

Appellant's next and final contention is that the statute here involved, providing for substituted service of process upon non-resident defendants causing personal injuries while using our highways, does not authorize the commencement of an action by substituted service of process where both plaintiff and defendant are nonresidents of this state and reside elsewhere in the same foreign state.

The challenged validity of this statute was before us, and held to be constitutional, in the late case of Hirsch v. Warren, 253 Ky. 62, 68 S. W. (2d) 767, 768, upon the principle therein announced that:

> "The rule deducible from the authorities is that, by virtue of its power to regulate the use of its highways by nonresidents, the state may declare that the use of the highway by the nonresident may by statute be treated as the equivalent of the appointment by him of a state official as the agent on whom process may be served in suits growing out of accidents in such operation, * * * provided the statute contain a provision making it reasonably probable that the notice will be communicated to the person sued."

Such power of the states under similar statutory provisions to thus impose terms upon nonresidents, as to their activities within their borders, has recently been much discussed. By reason of the very general enactment of such statutes, they have frequently been before the courts for their construction and the determination of their validity, where they have been uniformly upheld as representing a proper exercise of the state's police power, in affording protection to the safety of travelers on the states' highways and facilitating the enforcement of civil remedies by those injured in their persons or property by the negligent operation of motor vehicles thereon. The supporting principle of such protective statutes is that states, being under no constitutional mandate requiring them to provide highways for

general public use, may, where they have constructed them, impose reasonable and uniform regulations for their use, and where such legislation extends no further than putting nonresidents on the same general footing as the states' own citizens, with respect to the use of its public highways, it does not violate the due process provision of the Constitution. Pawloski v. Hess, 250 Mass. 22, 144 N. E. 760, 35 A. L. R. 945; Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Wuchter v. Pizzutti, 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446, 57 A. L. R. 1230; Young v. Masci, 289 U. S. 253, 53 S. Ct. 599, 77 L. Ed. 1158, 88 A. L. R. 170; Henry L. Doherty & Co. v. Goodman (U. S.) 55 S. Ct. 553.

Appellant's contention, however, is that even though the validity of this statute has been for such purpose and upon such ground upheld by us in the Hirsch Case, supra, the right to sue nonresident motorists by such substituted service of process provided under the statute is limited to a resident of the state against a nonresident defendant.

As to this, it may be noted that section 2 of the Act (section 12-2 of the Statutes) provides that:

"Said action may be filed either in the county where the loss or damage may have occurred, or in the county where the plaintiff or one of the plaintiffs may reside."

No express limitation is made by the language of the act as to who may avail themselves of its provisions by becoming plaintiffs in bringing actions thereunder by substituted service of process. The act having thus imposed no limitation upon the class who may become plaintiffs in bringing these special transitory actions for injuries received while using the state's highways, the question next presented is: Are there any good or valid reasons which should influence us in construing the act as limiting its provisions to resident plaintiffs only?

This exact question was, under a like statute and upon similar facts, presented and decided by the Supreme Court of Wisconsin in the case of State ex rel. Rush v. Circuit Court, 209 Wis. 246, 244 N. W. 766. There the defendant urged the same objections and argument against the Wisconsin statute being con-

strued as permitting a nonresident plaintiff, residing in the same foreign state with him, to bring an action against him by substituted service of process for the recovery of damages for personal injuries caused by the defendant's negligent driving of his car upon the state's highways, contending that to so construe the statute would result in the denial to the defendant of due process of law and the violation of the Fourteenth Amendment of the United States Constitution. That court, in considering and disposing of such contention, said:

"The rendition of a personal judgment by a court of a state against a person over whom the state has no jurisdiction would, of course, be a denial of due process, but by virtue of this statute and the consent of the defendant to the service of process therein provided for, evidenced by his use of the highways of this state, he is well within the jurisdiction. State ex rel. Cronkhite v. Belden, 193 Wis. 145, 211 N. W. 916, 214 N. W. 460, 57 A. L. R. 1218.

"Even assuming that the consent upon which the constitutionality of such laws is based is a fiction and that the real basis for sustaining them is the necessity of securing safety on the highways, the extension of the benefits of the act to nonresidents violates no constitutional prohibition. The state has nearly as great an interest in promoting the safety of nonresidents using our highways by securing for them convenient redress in case of injury as it has in its own residents. The necessity which justifies such an act with respect to residents is broad enough to justify the inclusion of nonresidents. The fact that there may be occasional cases in which participants in an automobile accident happen to be not only nonresidents of this state but residents of the same distant state or town, and that as to them there is no particular call for the protection given by the act, does not militate against its constitutionality. * * *

"This statute is plain and without ambiguity. No words occur in it limiting the benefits thereof in its operation to resident plaintiffs. The apparent purpose of giving equal protection to resident and

nonresident users of this state's highways is consistent with constitutional requirements. Section 2, art. 4, U. S. Const.; Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538; Blake v. McClung, 172 U. S. 239, 19 S. Ct. 165, 43 L. Ed. 432.''

We find ourselves in harmony with the conclusion and reasoning expressed in this well-considered opinion, interpreting and construing the act, as extending the right of its convenient redress to a nonresident plaintiff to sue under its provisions in case of injury received while using our highways, as being sound and violating no mandate of the Constitution. We are for such reasons led to adopt its conclusion and holding as here applicable and decisive of the question presented. Therefore, being of the opinion that upon the whole record no prejudicial errors are shown to have been committed by the trial court, its judgment is affirmed.