## Fischer v. Eby.

(Decided March 11, 1938.)

WM. J. DEUPREE for appellant.

WM. E. WEHRMAN and E. H. WALTON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This is a companion case of H. A. Fischer v. Edward Eby, this day handed down by this court. 272 Ky. 545, — S. W. (2d) —. Appellee is the wife of the appellee in the case supra, and was driving the car at the time of the accident involved in the other case, and her injuries involved in this appeal resulted from the same accident, for which she recovered the sum of $2,250.

Appellee moved the court to quash the sheriff's return of the summons upon the same ground and reasons assigned in her husband's case, supra, but we held in that case that the court properly refused to quash the return. The only other question involved on this appeal is whether the amount of damages awarded appellee is excessive.

In appellee's petition, she alleged that as result of the accident she received injuries to her shoulder, her body twisted and bruised, and her legs badly burned, and as a result of her physical injuries and nervous shock she was permanently injured. In her evidence she attempted to describe certain injuries not set out in her petition, but the court excluded all evidence of any injury not alleged in the petition. Since there is no complaint or question raised in regard to the court's ruling on that question, we will confine our review of the evidence to that admitted by the trial court.

Appellee testified that her left arm was cut through the muscle. She said she was under the care of Dr. Mann for six weeks and was not able to get around or do anything except to carry a drink of water to her husband and she was suffering all that time and is still suffering. Later, after she returned to her home in Detroit, she was treated by Dr. MacVoy, and was still under treatment at the time of the trial. She was asked:

"Did these injuries cause you to be confined to your bed for any length of time? A. I never was really fast in bed, but I was lying down all the time."

She further said that before the accident she never was sick nor had any pain.

On cross-examination she testified that she got up each day and came down to her meals and looked after her husband and helped him to the bathroom. On the day after the accident she walked down to a garage which was about six or seven hundred feet from the house; that she made the trip to the garage and back by herself without any assistance. She said that she stayed at Dr. Mann's home in Kenton county, Ky., from June 16th to July 29th, waiting for her husband to get able to travel. She said she still had pains in her arm and hip joints and continued to suffer pains as the result of the accident. After she returned to her home in Michigan and since that time, she had been cooking and washing dishes.

Dr. Mann testified that he treated appellee six or seven days after the accident and that she suffered contusions on her limbs and arms; that he prescribed sedative medicines for the pain and counteracted the acid burns with akaline treatments. He said that probably the pains from the burns of her arms would continue. In speaking of whether her injuries were permanent, the doctor said it may continue, but the acid burns had permanently healed up. He said he had examined her recently just previous to the trial and she was still complaining.

The depositions of Dr. MacVoy were taken in Detroit, Mich., and read to the jury as his evidence. According to Dr. MacVoy's records or data from which he testified, he treated appellee frequently from the time she returned to her home in Michigan in the fall of 1935 until the following April. In describing her injuries, he said she had a partial discoloration or partial tearing of the membrane between the third and fourth ribs on the left side and had an arm injury that she said still pained her. He further said, however, that he could not tell what was the matter with that arm, but he presumed that it was a nervous condition. He said:

"I can't satisfy myself just what makes it pain her as she says it does."

He said he examined her for fractured bones but found no fractures. He was asked how long he thought it would be necessary for her to continue treatments, and he said that he had done all he could do for her and

again repeated that he could not understand what caused her to have the pain that she claimed to have in her arm. When asked about her present condition, he said, "I would consider that she is in pretty fair shape," and he said he was unable to find any permanent injuries. On cross-examination the doctor was asked about the pain she claims to have in her arm, and he again reaffirmed that he was unable to locate any cause for the pain and had given her all treatments and tests known by him, but was unable to find any cause for pain and was only relying on what she said.

To sustain appellant's position that the verdict is excessive, numerous cases are cited and relied on, but it would be impractical to refer to and discuss all of them. However, we will notice some of them which we deem in point or approximately so.

In Jefferson Dry Goods Company v. Dale, 257 Ky. 501, 78 S. W. (2d) 305, a verdict of $1,500 was held excessive. In that case the plaintiff fell on the pavement of the street causing flesh bruises and shock to his nervous system requiring a physician's attendance and treatment and a plaster cast on the bruises. There was also testimony that an X-ray revealed a dislocation of the lower vertebrae. But there was no evidence of permanent injury.

In Trosper Coal Company v. Crawford, 152 Ky. 214, 153 S. W. 211, the plaintiff's injuries consisted of bruised back which, according to his testimony, caused him great pain from that time until the trial of the case, five months later. It appears that he was internally injured and he testified that he passed a lot of blood— as much as a pint, and his kidneys refused to act; the doctor gave him medicine to relieve this trouble. He was confined to his bed for two or three weeks, then was able to go about, though unable to return to his work for eight or ten weeks after the accident. He was employed in the mines as a coal miner and earning good wages. There was no evidence of permanent injury. A verdict of $2,150 was held excessive.

In Lexington Railway Company v. Woodward, 106 S. W. 853, 32 Ky. Law Rep. 653, a verdict of $3,000 was held excessive. In that case it appears that Mrs. Woodward was considerably bruised about the arm and hip but no bones were broken; she complained of violent pains in her hip, leg, arm, and head, and was confined

to her bed most of the time for two months, and was still suffering as a result of her injuries at the time of the trial, which was one year after the accident.

It appears to us that the injuries of the various persons in the cases supra were about the same, and indeed some of them greater than the injuries of appellee in the present case.

On the other hand, appellee cites various cases as authority to sustain her position that the verdict is not excessive. We will notice some of them wherein the verdicts are approximately the same as the verdict in the present case—some of them perhaps being for a little more and others a little less.

In Lack Malleable Iron Company v. Graham, 147 Ky. 161, 143 S. W. 1016, a verdict of $2,500 was held not excessive. In that case the plaintiff was severely burned and he was unable to work between six and ten weeks, the evidence on that point being conflicting. During that time he was under the care of three physicians and it appeared from the evidence of the doctors that the plaintiff's injury was permanent and that he would never have the same use of his foot that he theretofore had. The toe next to the great toe would have to be amputated; it was burned to the bone and the injury to the foot was permanent.

It is thus seen that in the case last cited above there was substantial evidence of permanent injury of the foot and, in addition, the plaintiff lost approximately two months' time from his work and in all reasonable probability his earning capacity was permanently impaired.

Also, in Stony Fork Coal Company v. Lingar, 152 Ky. 87, 153 S. W. 6, a verdict of $2,500 was held not excessive where the evidence showed that the leg of the injured person was broken and his ankle dislocated, leaving him, after the fracture was cured, with a crooked, deformed leg.

Many other cases are cited and relied on for appellee, but so far as our examination of them extends, it appears that they are along the line of the cases supra, cited for appellee—the nature and permanency of the injuries, ages of the parties, their employment or occupation and time lost, appearing not to be in line with the facts and circumstances in the present case.

Appellee admitted in her testimony that she was never confined to her bed. She assisted her husband and waited upon him and, as stated, next day after the accident she walked about 700 feet from her rooming house to a garage and back to the house without any assistance. After she returned to her home in Detroit, she did her cooking, washing dishes, and like chores. Also, according to the evidence of both doctors, she had no broken bones and the burns on her arm had healed up, and, in the language of Dr. MacVoy, "she is in pretty fair shape." There is no evidence of permanent injury except that she says she still suffers pain in her arm. Dr. MacVoy exhausted all remedies and means known to him to ascertain the cause of the pain but was unable to do so. A reading of his evidence is somewhat persuasive that if she has any pain in her arm, he really doubts that it is caused by the burn or injury to her arm. Appellee is a woman of mature age—63 years—and it is not shown that she was engaged in any gainful occupation, or any occupation other than the household work for herself and her husband and it appears she is able to do the greater part of this work. However, she said she had a janitor who did some of the work, but she did her cooking and dishwashing. It is not unusual that a lady of her age, regardless of health or physical condition, would have a janitor or other assistant to do the harder part of the work usually required about the home.

The facts disclosed in this record impel us to the conclusion that the verdict and judgment of $2,250 is excessive.

The judgment is reversed and remanded with directions to set it aside and grant appellant a new trial, and for proceedings consistent with this opinion.

Whole court sitting.