## Pagliro v. Cleveland.

## Same v. Reckman.

May 14, 1946.

Stanley B. Mayer for appellant.

Harry N. Lukins for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellees, mother and daughter, were injured when a taxi-cab operated by appellant collided with another automobile at 10th and Chestnut Streets in Louisville. They had come from their home, Hammond, Indiana, and had spent several days in the city. On the morning of June 26, 1944, they hailed appellant's taxi near the Brown Hotel, and as they say, told the driver to take them to the Pennsylvania Station. According to the driver they said "Central Station;" whichever is true, the driver took them to Central Station, and learned that their train departed from Union Station. There was proof that unless a quick trip was made across town the appellees would miss their train, and it is clearly shown that the trip was a hurried one, the proof showing that as the taxi approached Chestnut Street it was making speed far in excess of proper limits, and the driver failed to obey a stop light at the intersection. The result was the collision with a car proceeding westwardly on Chestnut Street, causing severe injuries to Mrs. Cleveland and slight injuries to the daughter.

The driver of the taxi was, as he claimed, knocked unconscious and recalled very little about the collision. We would go more into details but for the fact that here, appellant, as was done on trial, admits negligence, asking reversals on the sole ground of excessive damages. The court below instructed the jury solely on the measure of damages. The cases were consolidated below, and on motion heard together here.

Mrs. Cleveland sought $10,000 for pain and suffering, $250 for doctors' bills, $112.80 hospital bills, $69.66 for drugs and other incidentals, and $600 for loss of time. The court in his instruction limited the recovery

to $10,000 for pain and suffering, $387.46 for medical, hospital and other incidental expenses, but did not, as we think proper, submit the question of damages for loss of time. The daughter sought to recover $3,000 on account of her injuries, without incidentals. Upon submission the jury found for Mrs. Cleveland $5,387.46; for Mrs. Reckman $1,000, and judgments were so entered.

To determine the question presented we must look to the testimony of each party and the attending physicians, some who gave testimony pro and con, following examinations not for the purpose of treatment.

Mrs. Cleveland, at the time of the accident, was about fifty and the daughter nineteen years of age. Following the accident Mrs. Cleveland was taken to General Hospital, where she was treated. Her daughter accompanied her, and the next day Mrs. Cleveland was removed to the Brown Hotel and there attended by Dr. Lukins. At the hospital she was X-rayed about the upper portion of her body and completely taped. She remained at the hotel one day, and at the doctor's suggestion removed to Norton Infirmary, where he attended her. After three or four days friends came to Louisville and took them to Hammond, where the family physician took charge.

Mrs. Cleveland suffered painful injuries in the way of bruises upon her head and face; she complained of her vision, her eyes being "foggy" for some months. She suffered other bruises upon her body, and it developed that she had several ribs broken. She also complained of some bad heart condition, but this testimony (hers and the doctors) was excluded because not specified. At the time of trial, about one year after the accident, she said she still suffered some pain and discomfort.

The record does not show that the doctor who attended Mrs. Cleveland at the General Hospital testified, nor were any of the X-ray pictures introduced. Dr. Lukins testified as to her condition when he treated her at the hotel. He said she was suffering severely and was unable to rise from her bed. Her chest was taped; her pulse was weak; she had bruises on the lower portion of her body, and that most of the treatment was by way of medicine to alleviate pain and reduce the nervous state. This doctor said he found fracture of five ribs.

He said he had not seen Mrs. Cleveland since she left Louisville. He said he found no injury to the eyes, further than to the tissue around the eyes, where contusions appeared. Dr. Lukins examined the films and was asked if they did not fail to show any fractures, and he answered, ''I would not say that,'' and explained that it was difficult to form a conclusion as the tape obscured the film.

The same physician testified as to his observations of the daughter (Mrs. Reckman) whom he saw first at the Hotel. She was ''much upset; was nervous, and tender over one breast, and complained of her lower limbs paining her. She had a slight bruise on one side of her head; she had a degree of fever,'' but was able to aid her mother. She went to the hospital, but was not officially admitted. The doctor says she suffered pain for several days, and had a degree of fever. He administered medicines to relieve pain and reduce nervousness. She had no bones broken.

Dr. Jones took charge of both after they reached home, on July 3. He testified to about the same conditions as had Dr. Lukins. He treated them at various times, and again examined Mrs. Cleveland on September 12th. She was improved, but complained of some spinal pain and some in her chest. She was unable to do more than minor housework. ''The cuts on her arm had healed nicely, and there was no further evidence of contusions.'' When the physician examined her the last time he found ''the ribs healed and I believe she should be in pretty good shape, but she complained of some pain when bending forward or backward.'' Asked as to permanency of injury, the doctor merely said, ''As far as the ribs are concerned, at that time they appeared healed. She complained of faulty vision, and I suggested consultation with an oculist,'' though it does not appear this was done.

Following the September examination the doctor saw her occasionally, but for nothing serious. He said that on the September examination ''we thought she was in pretty good shape; that a matter of time will do her more good than anything else.'' He examined Mrs. Cleveland (and the daughter) on June 1, 1945, shortly before trial. He found no objective signs of injury, except a slight hardening area in the left tem-

poral region. Asked if Mrs. Cleveland was disabled from doing office work (her former employment) he said, "If she does work that does not cause much excitement or exertion she could do that, but heavy or hard work or excitement, things of that sort, she should not do."

Dr. Jones also testified concerning the daughter's condition, some examinations of mother and daughter being made contemporaneously. The daughter complained of pain in her back; "she had no fracture, dislocation or other evidence of pathology in the regions we examined. Her back was immobilized and she was told to remain quiet until the contusions, and so forth, were cleared up. There were some contusions about her body, but no lacerations. She complained of her back, left shoulder and breast." He attended her occasionally, but made no examination in September, 1944, because she was in school. He did make examination in June. She still complained of some pain in her shoulder, the pains occurring mostly in damp weather. She complained of pain in the left breast, "but I was unable to find any lump or tumor. Her condition has improved to where she is in pretty good shape." As to permanency, he said, "These things are purely subjective, and as to permanency I don't know. Some of them remain on and most of them do not." He said that on his last examination he found no objective signs of injury, "except difficulty in putting her hand back of her head."

Dr. Jefferson, by request of appellant's counsel, examined both appellees on June 20, 1945. He said he gave Mrs. Cleveland a thorough examination and did not find any objective symptoms. He also examined the X-ray films, but could make very little of them as they had been taken through the bandages, but he was unable to see any fracture. He was positive that at that time he found no objective symptoms in the case of either.

The standard by which an award for damages, caused by a wrongful act is judged is variable, so much so that to determine the issue no particular opinion of ours or any other court may be conclusively applied to the pending case. The facts are always different; there are always the questions of the extent of suffering pain and mental anguish, permanency, or nonpermanency of the results of injury, impairment of power to earn, plus necessary expenditures. This is well illustrated by

the fact that counsel for appellee cites some ten or more cases as illustrative of the point that the damages allowed were within the realms of reason. On the other hand appellant cites about the same number of cases in arguing that the verdict is excessive. The difficulty we have in applying any of them to the present case is made obvious when we observe that counsel for each take some pains to distinguish the array of the other's citations, and we have taken the trouble to review all of them and find ourselves unable to apply any one to the instant case. We do find that in most of the cases where there was a substantial award, the facts as to pain and suffering may not have differed, but there were present in many a showing of some permanency of injury and loss of earning power. As illustrative, counsel for appellee cites the case of Louisville & N. R. Co. v. Jolly's Adm'x, 232 Ky. 702, 23 S. W. 2d 564, commenting that we upheld a verdict of $5,000 for four days of pain and suffering, where death followed. It is noted in that case the jury returned an aggregate verdict of $33,000, allocating $5,000 for pain and suffering. We did not enter into a discussion as to whether that particular item was or was not excessive. This was a case practiced under the Employer's Liability Act, and the jury divided the award amongst the widow and three infant children, and there was no contention as to the allocation of the $5,000 for pain and suffering; the insistence was that the aggregate was excessive, and we considered that question alone, upholding the verdict.

Perhaps a recent case, which comes near the instant cases (Mrs. Cleveland's at least) one not cited by appellee, is Williams v. Balmut, 298 Ky. 249, 182 S. W. 2d 779. There we upheld a verdict of $3,000 for plaintiff who had suffered injuries in an automobile collision, from which she suffered multiple rib fractures, injury to her left side and scars and bruises on her head, and other portions of her body. These injuries had caused, according to the doctor, traumatic neuritis, all discernible from objective symptoms, with possible permanency. Perhaps one of the most applicable cases cited by appellant is Fischer v. Eby, 272 Ky. 554, 114 S. W. 2d 768, wherein we reversed a judgment for $2,250 because excessive. Plaintiff, a woman sixty-three years of age, was injured in an automobile accident, suffering contusions on the upper and lower parts of her body; she had a

partial tearing of the membrane between the third and fourth ribs on the left side, and an arm injury which caused a nervous condition. On a final examination the wounds had healed, but "she was still complaining," though, as here, the symptoms were subjective and there was no permanency. In that case, as well as in Chesapeake & O. R. Co. v. McCullough, 230 Ky. 478, 19 S. W. 2d 1076, (cited by appellant) will be found numerous pro and con discussions of the subject.

A reading of these cases shows the rule to be that our power to reverse in cases where it is claimed damages are excessive is limited to instances where the award appears to be so disproportionate to any reasonable consideration of the proven injury and its results, as to strike the court at first blush that the verdict was not reached in calm deliberation, but resulted from something which in a measure tended to create a passion or prejudice, or some element which might have tended to bias the minds of the jurors. Consolidated Coach Corp. v. Hopkins, 228 Ky. 184, 14 S. W. 2d 768; Nussbaum v. Caskey, 235 Ky. 640, 643, 32 S. W. 2d 18.

It is suggested by appellant that the fact of widowhood (in Mrs. Cleveland's case) coupled with the repeated suggestions of the loss of a son in war service, which naturally disturbed her very much, had a tendency to affect the jury. Added to this was the manner in which the accident occurred, it being such that appellants made no appreciable effort to show lack of negligence on its part, or any contributory negligence on the part of appellees.

From a careful consideration of the testimony, we are concluded that Mrs. Reckman did not suffer injuries to an extent to warrant the verdict of $1,000. As to Mrs. Cleveland, while no doubt she did suffer pain and mental anguish, there was no proof of probative value of permanency of injury or loss of time, or power to earn. Dr. Jones, the family physician, said the fractured ribs and other bruises had healed, and on his final examination he frankly stated that he found no objective symptoms. Mrs. Cleveland was in the hospital for about a week, and under medical care of her family physician a few days in June and during July following the accident; he thought he "stopped in two or three times in August." After the September examination he said no

further medical attention was required, as he concluded "she was in pretty good shape." On his final examination he found no objective symptoms, and was of the opinion that there had been practically complete recovery from injuries complained of, resulting from the accident, or claimed to have so resulted. There is no medical evidence of permanency of results, nor impairment of capacity to earn. It may be gathered from Mrs. Cleveland's testimony that she may return to her position as cashier of a real estate company, which would not entail or require "excitement or exertion or heavy or hard work," and which character of work the physician thought she could do without bad results.

In each case we have reached the conclusion that both verdicts fall into that class which requires us to apply the rule, and hold that each is excessive, and for that reason are compelled to reverse each judgment with directions to award appellant a new trial.